**POSTTAPE ASSOCIATES**

v.

**EASTMAN KODAK COMPANY.**

**No. 72–1009.**

United States District Court,
E. D. Pennsylvania.

July 11, 1975

On Motion for Judgment

On Motion for Judgment Notwithstanding Verdict, Aug. 7, 1975.

See also D.C., 387 F.Supp. 184.

Joseph G. Manta, Edward R. Paul, Philadelphia, Pa., for plaintiff.

Henry T. Reath, Joseph M. Hankins, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff Posttape Associates, a limited partnership formed to produce a documentary film, filed this diversity action against defendant Eastman Kodak

Company, a manufacturer and seller of photographic film. Plaintiff alleged that (1) to produce a documentary film, plaintiff purchased Ektachrome Commercial film manufactured and sold by defendant, (2) plaintiff used the film to shoot part of the documentary film, "Childhood II", (3) during the processing of the film marks were discovered on the film which made the film commercially useless, (4) the defects in the film were caused by defendant's negligence, (5) defendant breached the Uniform Commercial Code warranties of merchantability and fitness for a particular purpose because the film was defectively manufactured, defendant was aware of the particular purpose for which the film was purchased, and the purchase was made in reliance on defendant's expertise, and, (6) defendant breached its duties under Section 402A of the Restatement of Torts 2d. Responding to these allegations, defendant contended that there had not been a breach of warranty, defendant was not negligent, Section 402A was inapplicable to this action, and that at the time of sale plaintiff and defendant agreed to limit plaintiff's remedy for all liability to replacement of the film. Plaintiff argued that there was no agreement and that the attempted disclaimer was ineffective under the Uniform Commercial Code, Section 402A, and Pennsylvania case law.[1]

Commencing March 3, 1975, we held a jury trial on these issues. Having bifurcated the trial we heard the liability phase of the trial the week of March 3, 1975, and the damage phase of the trial the week of March 10, 1975. Pursuant to Fed.R.Civ.P. 49 we submitted the liability phase of the trial to the jury on special interrogatories and submitted the damage phase of the trial to the jury on a general interrogatory. By its answers to the special interrogatories, the jury found that (1) defendant Eastman Kodak was negligent in the manufacture of the Eastman Ektachrome Commercial 7252 film, (2) the film in question was in a defective condition unreasonably dangerous to property of plaintiff (including the film itself) at the time of its delivery to plaintiff, and (3) by their intentions and/or the usage of trade at the time of the sale of the film in question the parties did not agree to limit defendant's liability to replacement of the film in question. By its answer to the damage interrogatory, the jury awarded damages to plaintiff in the amount of $143,000. Pursuant to Fed.R.Civ.P. 58 we approved the form of the judgment and the clerk entered it. Defendant now moves for relief from this judgment under Fed.R.Civ.P. 60(b)(2), (3) and (6). We deny this motion.

Fed.R.Civ.P. 60(b) provides:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; . . . (3) fraud; . . . (4) the judgment is void; (5) the judgment has been satisfied; . . . or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable

---

1. On December 4, 1974, we issued a Memorandum and Order in which we held that the disclaimer in question did not specifically disclaim liability for negligence. Having decided that the notice, on its face, was not an effective disclaimer of defendant's responsibility for the negligent manufacturing of the film, we did not decide whether (1) there was an agreement, (2) the notice effectively limits defendant's liability on any theory, and (3) the parties intended the contract to limit defendant's liability for negligence. We gave the parties an opportunity at trial to present evidence on these unanswered questions.

time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. . . .

Relief under Rule 60(b)(2) is extraordinary relief which, in our sound discretion, we may grant only where extraordinary circumstances are present. *Plisco v. Union Railroad Company*, 379 F.2d 15, 16 (3 Cir. 1967). A party is not entitled to a new trial on the grounds of newly discovered evidence unless "it . . . appear[s] that the evidence is not merely cumulative, that it could not have been discovered prior to trial through the exercise of reasonable diligence, and that the evidence is such as would probably change the outcome. "*Giordano v. McCartney*, 385 F.2d 154, 155 (3 Cir. 1967). Newly discovered evidence is "evidence 'of which the aggrieved party was excusably ignorant' at the time of trial." *Plisco*, at 16. (citations omitted). Relief under Rule 60(b)(3) is also extraordinary relief. The burden of demonstrating its appropriateness lies with the movant who must establish by clear and convincing evidence that the adverse party obtained the verdict through fraud, misrepresentation, or misconduct. *Gilmour v. Stres-*

*con Industries, Inc., et al.*, 66 F.R.D. 146 (E.D.Pa.1975); *Brown v. Pennsylvania Railroad Co.*, 282 F.2d 522 (3 Cir. 1960). We must deny a Rule 60(b)(3) motion if it is merely an attempt to relitigate the case or if we conclude that fraud has not been established. See *Gilmour*, at 153. Relief under Rule 60(b)(6) "is available only in cases evidencing extraordinary circumstances, *Ackerman v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950), and only when the relief sought is based upon 'any other reason' than a reason which would warrant relief under 60(b)(1–5)." *Stradley v. Cortez*, 518 F.2d 488 (3 Cir. 1975). Applying these principles to this action we find defendant is not entitled to relief under Rule 60(b)(2), (3) or (6).

In support of its Rule 60(b)(2) motion, defendant claims that the film "Together" could not have been previously discoverable by the exercise of reasonable diligence and that it would probably change the outcome of the case.[2] We cannot agree with the first part of this claim—that the film "Together" could not have been previously discoverable by the exercise of reasonable diligence, for, as plaintiff in a mem-

---

2. Defendant bases this claim on the following statements as outlined in defendant's brief in support of this motion:

During the course of the trial on damages, plaintiff introduced the testimony of Mr. Donald Davidson, to prove the amount of lost profits which Posttape suffered. . . . Mr. Davidson testified, under oath that

¶ the timing of a film was a key factor in its commercial success and that the first film released which dealt with a particular subject (e. g. war satire films, youth oriented film, nude encounter films,) usually attracted the lion's share of the market because by the time similar films dealing with the same topic hit the market, the interest in that type of film, has usually been absorbed by the first film distributed commercially;

¶ "Childhood II" was substantially similar to a movie entitled "Together" and that

both of these pictures fell in the category of "nude encounter films";

¶ "Together" was marketed commercially in September, 1971 and grossed some $2 million;

¶ Had "Childhood II" been marketed prior to the movie "Together" it would have grossed $1 million because it would have absorbed much of the interest in "nude encounter films."

After Mr. Davidson had testified, during the course of the remainder of the damage trial, defendant's counsel attempted to obtain a print of "Together" to offer and prove that the films were not comparable . . . .

At the close of the damage trial defendant's counsel continued their efforts to find a print of "Together," . . . .

[A] print was viewed by defendant's counsel on May 9, 1975 and because of the complete dissimilarity between "Childhood II" and "Together" defendant filed this Rule 60(b)(2) motion.

**328**

orandum and an uncontradicted affidavit notes, plaintiff informed defendant several months before trial that plaintiff was using the gross revenues of the film "Together" as a basis for plaintiff's calculations of the gross and net losses which plaintiff claimed.[3] Accordingly, we find that defendant has not satisfactorily explained why, in spite of its knowledge that plaintiff was intending to use "Together" as a basis for its damage claim, no attempt was made to view the film "Together" before trial. The ease with which the film "Together" was located after trial demonstrates that with the exercise of reasonable diligence defendant's counsel could have viewed the film "Together" before trial. See *Giordano*, at 156. This is a case in which defendant was on full notice before trial of evidence upon which plaintiff was placing substantial reliance. Defendant could have acted directly to test its accuracy. See *Krock v. Electric Motor and Repair Company*, 339 F.2d 73, 75 (1 Cir. 1964).[4] This is more a case of inexcusable than excusable negligence.

■ In support of its Rule 60(b)(3) motion, defendant claims that the testimony of Donald Davidson in which he stated that the film "Together" and "Childhood II" were similar was fraudulent. Defendant bases this claim on the affidavit of counsel for defendant who, after viewing the movie "Together", claims that the movie "Together" "is in no way comparable to, nor does it in any way resemble the movie 'Childhood II'." In light of the serious nature of this allegation we carefully reviewed the testimony of Donald Davidson, which testimony we found highly credible, and, at the request of defendant's counsel, we sat through a showing of the film "Togeth-

---

3. In the uncontradicted affidavit plaintiff states:

    A. On January 4, 1973, plaintiff informed the defendant in Answer to [defendant's] Interrogatory 14 that, had there been *no* delay caused by defendant's conduct, the film would have been released earlier and could have grossed in excess of $2,000,000.

    B. On August 7, 1974, before the close of the discovery deadline, plaintiff filed Answers to defendant's Second Set of Interrogatories. In answer to Interrogatory 4, plaintiff stated: "those who stressed the timing of the distribution of Childhood II include the following: . . . .

        Donald Davidson
        3601 Conshohocken Avenue
        Philadelphia, Pennsylvania

Defendant's Interrogatory 5(a) asked plaintiff to explain plaintiff's calculations of the gross and net losses which had been set forth in plaintiff's Answer to defendant's original Interrogatories. In answer thereto, plaintiff stated the following:

    5. (a) The gross revenues of a film entitled "Together" which gives the impression through its advertising as being an encounter film and was distributed to the public on or about September 1971, totaled approximately six million dollars. Said film was one of the first such purported encounter films and had Childhood II not been delayed it would have been available for distribution well before "Together". The gross revenues of "Together" were reported in "Variety," the trade magazine of the motion picture industry. The issues of "Variety" wherein the figures were disclosed is not presently in the possession of plaintiff, however, plaintiff is attempting to locate said issues and will produce same when located.

Interrogatory 5(c) asked for the identity of all persons having any knowledge relating to this alleged loss of gross and/or the alleged minimum return. One of the three names given in answer to that Interrogatory was the name "Donald Davidson."

    C. Defendant admits that on September 11, 1974, it received plaintiff's original proposed pretrial order which listed Donald Davidson as a damage witness.

    D. On February 7, 1975, plaintiff served its Proposed Joint Final Pre-trial order, which again listed as a damage witness:
        Donald Davidson

4. Defendant places substantial reliance on the decision in *Krock v. Electric Motor and Repair Company*, 339 F.2d 73, 75 (1 Cir. 1964). As plaintiff points out, this action is easily distinguishable from the *Krock* case because here defendant was on full notice before trial of the evidence which defendant now claims is newly discovered.

er". We have also considered the recently filed affidavit of Donald Davidson in which he reasserts that the opinion he rendered during trial was, and remains, his honestly held expert opinion.[5] Having done this, we find that defendant has failed to show by clear and convincing evidence that any fraud was perpetrated in this case.

In support of its Rule 60(b)(6) motion, defendant claims that the testimony of Donald Davidson is inaccurate and misleading. Again, having reviewed the testimony of Donald Davidson, sat through a showing of the film "Togeth-

er", and considered the recently filed affidavit of Donald Davidson, we find that relief under Rule 60(b)(6) is not warranted.

Having determined that the evidence in question could have been discovered prior to trial through the exercise of reasonable diligence, that defendant failed to meet its burden of establishing that plaintiff obtained the verdict through fraud, misrepresentation, or misconduct, and that exceptional circumstances which would warrant relief under Rule 60(b)(6) do not exist, we, in the exercise of our discretion, hold that

---

5. In his recently filed affidavit Davidson states:

No two films are identical. In rendering this opinion, I discussed those areas of similarity between *Childhood II* and the movie *Together*, which in my opinion allowed me to form my opinion. Those areas are as follows:

(a) *Together* was a low-budget movie (N.T. 829);

(b) *Together* was a semi-documentary (N.T. 823–825);

(c) *Together* was in the general category of nude encounter (N.T. 823–825);

(d) *Together* was aimed at the youth oriented age group between 18 and 26 (N.T. 830);

(e) *Together* used the pro-con advertising technique to sell the film (N.T. 825)

(a) *Childhood II* was a low-budget movie (N.T. 830);

(b) *Childhood II* was a documentary (N.T. 823);

(c) *Childhood II* was a nude encounter film (N.T. 823);

(d) *Childhood II* was aimed at the youth oriented age group between 18 and 26 (N.T. 830);

(e) I had talked to Mr. Gibson in April or May of 1971 about using the pro-con advertising technique for *Childhood II* (N.T. 823–825)

In no way was the amount or type of explicit sex or the comparative pornographic qualities of the films a consideration which entered into my opinion. In fact, I testified that the movie *Together* was "x-rated" whereas *Childhood II* was not (N.T. 838); that there were simulated scenes of fornication in *Together* but there were none in *Childhood II* (N.T. 838); that the movie *Together* involved more nudity and sexual exploitation (N.T. 825); that *Together* utilized a script, had actors playing roles and the actors were paid for their work (N.T. 854). *Childhood II* had no script, no paid actors, but was "cinema veritae."

I testified that a straightforward, honest attempt to show an encounter movement would have had box office appeal in the summer of 1971 (N.T. 845).

I also testified that I was in charge of the local advertising for the film *Together* and that I had previously spoken to Richard Gibson concerning an advertising plan for the film *Childhood II*. My advertising of the film *Together* did not sell it as a sex film and I had not planned advertising *Childhood II* as a sex film (N.T. 837, 823).

Whether the movie *Together* contains the sex of *Deep Throat* or of an 8mm peep show with no possible redeeming social value would not alter my opinion. The amount and type of explicit sex in the movie *Together* is absolutely irrelevant to the expert opinion which I rendered in this case.

I hereby repeat and reaffirm my opinion that had *Childhood II* reached the market in the summer of 1971 before the film *Together*, *Childhood II* would have grossed $1,000,000 as a minimum (N.T. 835) and netted approximately $600,000 (N.T. 836).

defendant is not entitled to the extraordinary relief afforded under Rules 60(b)(2), (3) or (6).

## ON MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT

Plaintiff Posttape Associates, a limited partnership formed to produce a documentary film, filed this diversity action against defendant Eastman Kodak Company, a manufacturer and seller of photographic film. Plaintiff alleged that (1) to produce a documentary film, plaintiff purchased Ektachrome Commercial film manufactured and sold by defendant, (2) plaintiff used the film to shoot part of the documentary film, "Childhood II," (3) during the processing of the film marks were discovered on the film which made the film commercially useless, (4) the defects in the film were caused by defendant's negligence, (5) defendant breached the Uniform Commercial Code warranties of merchantability and fitness for a particular purpose because the film was defectively manufactured, defendant was aware of the particular purpose for which the film was purchased, and the purchase was made in reliance on defendant's expertise, and, (6) defendant breached its duties under Section 402A of the Restatement of Torts 2d. Responding to these allegations, defendant contended that there had not been a breach of warranty, defendant was not negligent, Section 402A was inapplicable to this action, and that at the time of sale plaintiff and defendant agreed to limit plaintiff's remedy for all liability to replacement of the film. Plaintiff argued that there was no agreement and that the attempted disclaimer was ineffective under the Uniform Commercial Code, Section 402A, and Pennsylvania case law.[1]

1. On December 4, 1974, we issued a Memorandum and Order in which we held that the limitation in question did not specifically limit liability for negligence. Having decided that the notice, on its face, was not an effective limitation of defendant's responsibility for the negligent manufacturing of the film, we did not decide whether (1) there was an agreement, (2) the notice effectively limits defendant's liability on any theory, and (3) the parties intended the contract to limit defendant's liability for negligence. We gave the parties an opportunity at trial to present evidence on these unanswered questions. In their motion for a judgment notwithstanding the verdict defendant requests that we reconsider the December 4, 1974 decision. We have and again we find that the limitation did not specifically limit defendant's liability for the negligent manufacture of film. While it is true that a private party may validly enter into a contract to limit its liability for the consequence of its negligent acts, it is equally true that such a limitation is not favored by the law and must be construed strictly, with every doubt resolved against the party seeking to enforce it, especially when such party drafted the contract. *Neville Chemical Company v. Union Carbide Corporation*, 422 F.2d 1205, 1216 (3 Cir. 1970). Further a limitation or disclaimer of negligence must not contravene public policy and must clearly and unequivocally spell out the intent to grant such immunity and relief from liability. In other words, the limitation must plainly and precisely provide that liability for negligence is limited. See *Willard Van Dyke Productions v. Eastman Kodak Co.*, 12 N.Y.2d 301, 239 N.Y.S.2d 337, 189 N.E.2d 693, 694 (1963) cited approvingly by J. Adams in *Neville*, supra at 1217. Here, we find that the limitation which provides:

READ THIS NOTICE

This film will be replaced if defective in manufacture, labeling, or packaging, or if damaged or lost by us or any subsidiary company even though by negligence or other fault. Except for such replacement, the sale, processing, or other handling of this film for any purpose is without other warranty or liability. Since color dyes may in time change, this film will not be replaced for, or otherwise warranted against, any change in color.

is ineffective as a limitation of liability for the negligent manufacture of film to replacement of the film because the limitation for defective manufacture, labeling, or packaging of film is not a clear and unequivocal limitation for negligence in the manufacture of film and because the clause "even though by negligence or other fault" does not clearly modify the clause "defective in manufacture."

■ Commencing March 3, 1975, we held a jury trial on these issues. Having bifurcated the trial we heard the liability phase of the trial the week of March 3, 1975, and the damage phase of the trial the week of March 10, 1975. Pursuant to Fed.R.Civ.P. 49 we submitted the liability phase of the trial to the jury on a special interrogatories and submitted the damage phase of the trial to the jury on a general interrogatory. By its answers to the special interrogatories, the jury found that (1) defendant Eastman Kodak was negligent in the manufacture of the Eastman Ektachrome Commercial 7252 film in question, (2) the film was in a defective condition unreasonably dangerous to property of plaintiff (including the film itself) at the time of its delivery to plaintiff, and (3) the parties did not agree to limit defendant's liability for the negligent or defective manufacture of film to replacement of the film. By its answer to the damage interrogatory, the jury awarded damages to plaintiff in the amount of $143,000. Pursuant to Fed.R.Civ.P. 58 we approved the form of the judgment and the clerk entered it. Defendant now moves for a judgment notwithstanding the verdict under Fed.R.Civ.P. 50(b) or for a new trial under Fed.R.Civ.P. 59.[2] We deny this motion.

■ Judgment notwithstanding the verdict is proper only when, as a matter of law, the evidence is insufficient to create an issue of fact for the jury. *Barrett v. Robinson et al.*, 65 F.R.D. 652

(E.D.Pa.1975). It is seldom granted in favor of the party having the burden of proof and is particularly inappropriate where the case of the moving party depends upon the credibility of its witnesses. *Polhemus v. Water Island*, 252 F.2d 924, 928 (3 Cir. 1958); 5A J. Moore, Federal Practice ¶ 50.02(1), at pp. 2318–2319 (2nd ed. 1974).[3] A motion by a defendant for judgment notwithstanding the verdict under Fed.R.Civ.P. 50(b) limits itself to the legal question whether or not when all the evidence is considered most favorably to plaintiff, there is a complete lack of evidence to prove any necessary element of plaintiff's case. See *Morris Bros. Lumber Co. v. Eakin*, 262 F.2d 259, 263 (3 Cir. 1950). We may grant a Rule 50(b) motion only when we find, without weighing the credibility of the evidence, that there can be but one reasonable result. See 5A J. Moore, supra at ¶ 50.07(2), at p. 2356 (2nd ed. 1974). Applying these principles to this action we find defendant is not entitled to relief under Rule 50(b).

■ Defendant bases its Rule 50(b) motion on its claim that at the time of sale, plaintiff and defendant agreed to limit plaintiff's remedy for the defective or negligent manufacture of the film to replacement of the film[4] and that Section 402A of the Restatement of Torts 2d is inapplicable to this action.[5] It would have us find that as evidenced by (1) the notice on the outside of the individual film canisters and con-

2. We note that submitting a point for binding instruction that under all the evidence and the law, the jury's verdict must be for the defendant does not comply with the procedural requirements of Rule 50(b). We rest our decision, however, on the merits of defendant's motion. See *Barrett v. Robinson et al.*, 65 F.R.D. 652 (E.D.Pa.1975); *Sinclair v. Countryside Builders, Inc.* (E.D. Pa.1975).

3. In *Berguido v. Eastern Air Lines, Inc.*, 35 F.R.D. 200, 203 then Chief Judge Clary noted that:
    The credibility of witnesses is for the jury to decide, (citations omitted) and it is free to accept or reject all or any part of the testimony produced, even if the testimony is uncontradicted. (citations omitted).

4. On the issue of whether the parties agreed to limit defendant's liability for the negligent or defective manufacture of the film, the jury was instructed that defendant must establish by a preponderance of the evidence that there was such an agreement.

5. In support of its claim that Section 402A is inapplicable to this action defendant argues that 402A applies only when plaintiff complains of physical injury to his person or to property other than the allegedly defective property itself. In light of our disposition of the first part of defendant's Rule

tainers, (2) the deposition of Martin Spinelli, a half owner of Posttape, Inc., which had a 50% partnership interest in plaintiff Posttape Associates, and (3) the usage of trade in the film industry which plaintiff knew or should have known, plaintiff and defendant bargained in fact to limit defendant's liability for the defective or negligent manufacture of film to replacement. We cannot make such a finding, for the evidence, viewed in a light most favorable to plaintiff, does not lend itself exclusively to the conclusion that plaintiff and defendant agreed to a limitation.[6] The trial transcript shows that plaintiff did not expressly agree to the language of the notice in question and that plaintiff was not aware of any practice or usage of trade having such regularity of

observance as to justify the conclusion that when plaintiff purchased the film it expressly agreed that defendant's liability for the negligent or defective manufacture of film would be limited to replacement of the film. Further, the evidence bearing on the existence of a practice or usage of trade does not compel a single conclusion that a particular practice or usage of trade existed of which plaintiff knew or should have known. Finally, the trial transcript discloses that much of the testimony offered by defendant on the question of usage of trade was that of parties who were not entirely disinterested.[7]

Defendant bases its motion for a new trial on its claim that the jury's verdicts on liability and damages resulted from errors committed during the course of

50(b) motion and our disposition of the new trial issue, we need not decide this issue. See *Dorsey v. Yoder Company*, 331 F.Supp. 753, 757 (E.D.Pa.1971) where Judge Masterson noted:

> If plaintiff's verdict withstands attack on any one of the three theories he advances, then any errors committed with regard to the other two become harmless.

We again note that the parties stipulated that the film was unacceptable for commercial use and that the jury found that the defects in the film were caused by defendant's negligence in the manufacture of the film.

6. The evidence discloses the following: After deciding to use Ektachrome Commercial Film 7252 in the production of the documentary film "Childhood II," plaintiff, through Richard Gibson, a half owner of Posttape, Inc., which had a 50% partnership interest in plaintiff, contacted Messrs. Rice and Burns, employees of defendant, inquiring whether 7252 film would be available and appropriate for the filming of a documentary in November 1970. Having received assurances that the film was available and appropriate, Gibson orally placed an order for 105, 400 foot rolls of 7252 film. He followed the oral order up with a written purchase order, and, on October 12, 1970, he picked up the film. (N.T. 66–70). When he received the film he also received a shipping document. (N.T. 70). The film was packaged in individual film cannisters, all of which were packaged in individual boxes, all of which were placed in three or four larger boxes. On the outside of the individual cannisters and the individual boxes only was the

notice in question. (N.T. 59, 69). The notice did not appear on the purchase order, the shipping document, or the three or four larger boxes. When Gibson left the place where he picked up the film he was not aware that the notice was on either the individual cannisters or the individual boxes in which the cannisters were contained. He was not aware of any practice or usage of trade having such regularity of observance as to justify the conclusion that when he purchased the film he expressly agreed that defendant's liability for the negligent or defective manufacture of film would be limited to replacement of the film. At the time Gibson purchased the film Martin Spinelli, a half owner of Posttape, Inc., which had a 50% partnership interest in plaintiff, was aware that defendant places a notice on film which it sells. (N.T. 298). Although aware of a notice similar to the notice in question (see deposition of Spinelli at 76 and N.T. 297), Spinelli was not aware of any practice or usage of trade having such regularity of observance which would justify only the single conclusion that when Gibson purchased the film Gibson expressly agreed that defendant's liability for the negligent or defective manufacture of film would be limited to replacement of the film. (N.T. 299). Plaintiff neither knew or should have known of a practice or usage of trade limiting defendant's liability for the defective or negligent manufacture of film.

7. In support of its argument that as evidenced by the usage of trade in the film industry the parties expressly agreed to a limitation defendant directs us to the testimony of

the trial, were contrary to the weight of the evidence, and were contrary to law. In support of these claims defendant places principal reliance on three arguments.[8]

At the outset defendant argues that evidence of plaintiff's coverage by negative film insurance and of the availability of negative film insurance, although inadmissible to offset or mitigate damages, was admissible to show plaintiff knew that film manufacturers customarily limit their liability, was relevant to the credibility of Gibson who testified he was not aware of such custom, and was relevant to show the reasonableness of such a custom. We disagree. After analyzing defendant's arguments, we find that the probative value of the evidence that plaintiff was insured for the very losses it was attempting to recover from defendant is outweighed by "the possibility of prejudice to [plaintiff] resulting from the jury's consideration of the evidence on issues as to which it is irrelevant." See concurring opinion of Justice Harlan in *Eichel v. New York Central Railroad Co.,* 375 U.S. 253, 256, 84 S.Ct. 316, 11 L. Ed.2d 307 (1963); [9] McCormick on Evidence, § 201, p. 480 (1972). To the extent that such evidence related to the existence of a usage of trade there was other evidence "having more probative value and involving less likelihood of prejudice" than the evidence of plaintiff's insurance policy. 375 U.S. at 255, 84 S.Ct. at 317. To the degree that it was offered on the reasonableness of the usage of trade, it was irrelevant because the issue of reasonableness was not before the jury.[10] Insofar as it tested

Elias Drexler, Ben Gradus, Robert M. Smith and Kenneth Mason. In opposition to this argument plaintiff refers us to the cross-examination testimony of these same witnesses. A review of the cross-examination testimony discloses that: Drexler is an executive in Fuji Photo Film, Inc., which places a notice, similar to the notice here, on film it sells. (N.T. 346–347). Gradus has done a substantial amount of work for defendant. (N. T. 397–398). Smith, as an executive vice president of Durat Film Laboratories has a direct interest in seeing this limitation upheld. (N.T. 457). Mason is an employee of defendant. (N.T. 406).

8. We have considered defendant's other arguments in support of this motion and find them either without merit or harmless. Fed.R.Civ.P. 61. The requested instruction that Spinelli's knowledge of the notice and of the usage in the trade was not proper as presented. It was more an argument than an instruction to the jury. Further, defendant was permitted to argue the point to the jury. Any error with respect to 402A was harmless since the jury found defendant negligent and since defendant admitted that the film was unacceptable for commercial use. *Dorsey v. Yoder Company,* 331 F.Supp. 753, 757 (E.D.Pa.1971). After viewing defendant's film on the manufacture of film for about five minutes, we properly excluded the showing of the rest of the film. It was self-serving, irrelevant, and highly prejudicial to plaintiff. Finally, the harm, if any, resulting from comments made by plaintiff's attorney during his closing was cured by our cautionary instruction.

9. In *Eichel v. New York Central Railroad Co.,* 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963) the Supreme Court was presented with the issue of whether or not evidence that plaintiff was receiving $190 a month in disability pension payments under the Railroad Retirement Act was admissible for the purpose of impeaching the testimony of plaintiff as to his motive for not returning to work and as to the permanency of his injuries. In a Per Curiam opinion the Court, in reversing the Court of Appeals, held

> the likelihood of misuse by the jury clearly outweighs the value of this evidence. . . . It has long been recognized that evidence showing that the defendant is insured creates a substantial likelihood of misuse. Similarly, we must recognize that the petitioner's receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact.

375 U.S. 255, 84 S.Ct. at 317. This is true whether such evidence is presented during the liability or damage phase of the trial. *Tipton v. Socony Mobil Oil Co., Inc.,* 375 U. S. 34, 37, 84 S.Ct. 1, 11 L.Ed.2d 268.

10. We view the issue of reasonableness as one for the Court to decide when determining whether or not the limitation is unconscionable. See §§ 2–302(1) and 2–719(3) of the Pennsylvania Uniform Commercial Code, Pa.Stat. tit. 12A §§ 2–302(1) and 2–719(3).

Gibson's credibility its probative value was low, and thus inadmissible, because insurance may be purchased for many reasons none of which necessarily relate to plaintiff's knowledge or lack of knowledge of a usage of trade in the film industry. Accordingly, we find that the evidence that negative film insurance was available and that plaintiff actually had such coverage was properly excluded.

Next, defendant argues that the jury's finding that the parties did not agree to limit defendant's liability for the defective or negligent manufacture of film to replacement is not supported by any evidence and was contrary to the evidence of custom presented by Messrs. Drexler, Smith, Gradus, and Mason. Again, we disagree. Based on our review of the evidence [11] we find that the jury's verdict was not contrary to the weight of the evidence, was not seriously erroneous, and was not influenced by partiality or prejudice. Further, we find that there was no miscarriage of justice in the verdict as given by the jury. See *Lind v. Schenley Industrie, Inc.*, 278 F. 2d 79 (3 Cir. 1960); *Barrett v. Robinson et al.*, 65 F.R.D. 652 (E.D.Pa.1975). We, therefore, find that defendant is not entitled to a new trial on the grounds that the verdict is against the weight of the evidence.

Finally, defendant argues that the testimony of Donald Davidson, plaintiff's damage expert, was improperly admitted and should have been stricken and that plaintiff's damage evidence was, as a matter of law, inadequate to sustain a verdict in excess of $25,000. Again, we disagree. Davidson, as an expert rendering an opinion, testified that had "Childhood II" been released earlier, it would have grossed at least one million dollars. He based his opinion on the factors which determine the commercial success of a film—timing, advertising, and quality, and on a comparison of the films "Childhood II" and "Together." His testimony of the factors which determine the commercial success of a film is admissible as testimony by a witness, qualified as an expert, which "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. His testimony comparing the films "Childhood II" and "Together" and estimating the prospective profits of "Childhood II" is admissible as the testimony of a qualified expert in the film industry fully familiar with both the films "Childhood II" and "Together".[12] Thus, we find

11. See note 6.

12. In *Western Show Company, Inc. v. Mix*, 315 Pa. 139, 141, 173 A. 183, 184 (1934) the Supreme Court of Pennsylvania permitted the testimony of expert witnesses familiar with the damage question in issue to calculate the damages defendant caused. The court stated:

This opinion evidence is, of course, most unsatisfactory in character (citation omitted), but defendant can hardly be heard to object to its use since he has not even suggested that there was another reasonable way open to plaintiff to prove the substantial damages it had suffered at his hands.

Following the decision in *Western Show Co., Inc. v. Mix* the court in *Guady v. Seaman*, 188 Pa.Super. 475, 478, 149 A.2d 523 (1959) affirmed the trial court's decision to permit plaintiff to prove profit loss by the expert testimony of a well qualified accountant familiar with plaintiff's business. The *Seaman* court cited *Mix* for the proposition that expert testimony is admissible to prove damages which plaintiff has suffered by reason of defendant's breach of his contract where the witnesses are qualified and there is no reasonably safe basis for measuring the loss. Recently, in *Nemitz v. Bell Telephone Co. of PA*, 225 Pa.Super. 202, 207–208, 310 A.2d 376, 379 (1973) the court, citing Williston on Contracts, Revised Edition, Vol. 5, Section 1346, p. 3781 stated that prospective profits may be proven by evidence of profits made by others in a similar business where the facts are not greatly different and that where a breach of contract involves deprivation of a chance which has value in a business sense, a just reluctance will be felt by most courts to deny altogether the recovery of substantial damages.

Citing *Silver v. Television City, Inc.*, 207 Pa.Super. 150, 158, 215 A.2d 335 (1965) the court held

The essence of the legal principles above cited is that compensation for breach of contract cannot be justly refused because

that Donald Davidson's testimony was properly admitted.

With respect to defendant's argument that plaintiff's damage evidence was, as a matter of law, inadequate to sustain a damage verdict in excess of $25,000 we have carefully reviewed the transcript and find that plaintiff established a substantial basis from which the jury could assess damages in the amount of $143,000. Accordingly, we will not interfere with the jury's decision.[13]

proof of the exact amount of loss is not produced, for there is judicial recognition of the difficulty or even impossibility of the production of such proof. What the law does require in cases of this character is that the evidence shall with a fair degree of probability establish a basis for the assessment of damages.
Interestingly, the dispute in *Silver* concerned the testimony of the plaintiff, a person experienced in the entertainment field. He was permitted to testify as to the dollar value of a novel product which he claimed defendant had improperly used. Also see, *Riley v. General Mills, Inc.*, 226 F.Supp. 780 (E.D.Pa.1964); *Sablosky v. Paramount Film Distributing Corporation*, 137 F.Supp. 929 (E.D.Pa.1955).

13. The evidence on damages discloses the following: Because the Ektachrome Commercial Film 7252 purchased by plaintiff from defendant on October 12, 1970, was defective, plaintiff, to complete the production of the documentary, had to "shoot" the film a second time. (N.T. 601). The second shooting and the second shooting expenses were necessitated by the defective film used in the first "shoot". (N.T. 684). The film processing of the second "shoot" was completed by January 19, 1971, but, due to a depletion of funds caused by the expenses added by the second shoot, the film was not finally completed until some time later. "Childhood II," a low budget, nude encounter, documentary film, aimed at the youth oriented age group, had a box office appeal in the summer of 1971 and had there not been this delay the film would have grossed in excess of one million dollars which would have more than adequately covered all of plaintiff's expenses and rendered plaintiff a profit. (N.T. 823, 824, 825, 830, 845).