**Herman WARD**

v.

**REELED TUBING, INC.**

No. 83–4234.

United States District Court,
E.D. Louisiana.

April 30, 1986.

Bonnie L. Zakotnik, New Orleans, La., for plaintiff.

Thomas T. Grace, New Orleans, La., for defendant.

ROBERT F. COLLINS, District Judge.

This Jones Act case resulted from the death of Harold Ward, a coiled tubing operator employed by defendant, Reeled Tubing, Inc., who fell forty feet off a platform aboard the M/V RAM I in the Gulf of Mexico. On June 4, 1985, a jury awarded $300,000.00 in damages for conscious pain and suffering prior to death. The award was reduced twenty-five percent for plaintiff's contributory negligence.

The defendant, Reeled Tubing, Inc., now moves this Court to enter Judgment *non obstante veredicto* or, alternatively, to grant a new trial. While the defendant's motion was pending, the Fifth Circuit reconsidered the test for determining seaman status under the Jones Act. In light of *Barrett v. Chevron, U.S.A., Inc.,* 781 F.2d 1067 (1986), this Court now holds that Harold Ward was not a seaman. Accordingly, the Court will GRANT Reeled Tubing's motion for judgment n.o.v. for the reasons which follow.

*Judgment n.o.v.*

A Rule 50(b) motion for judgment n.o.v. can be granted when the evidence, including all reasonable inferences to be drawn from the evidence, points so strongly and overwhelmingly in favor of one party that

reasonable and fair-minded persons, in the exercise of impartial judgment, could come to only one conclusion. *Hubbard v. Faros Fisheries, Inc.,* 626 F.2d 196 (1st Cir.1980); *Vander Zee v. Karabatsos,* 589 F.2d 723 (D.C.Cir.1978), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1066; *Hale v. Holy Cross Hosp., Inc.,* 513 F.2d 315 (5th Cir.1975), *reh. denied,* 515 F.2d 1183 (5th Cir.1975). In other words, it is proper to grant a Rule 50(b) motion for judgment n.o.v. only when the evidence was insufficient to create an issue of fact requiring submission to the jury [see *Morelock v. NCR Corp.,* 586 F.2d 1096 (6th Cir.1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375; *Posttape Assoc. v. Eastman Kodak Co.,* 68 F.R.D. 323 (E.D.Pa.1975), *rev'd other grounds,* 537 F.2d 751 (3d Cir. 1976)] or, when a jury verdict has been returned and the evidence is legally insufficient to support the verdict. See *Hahn v. Atlantic Richfield Co.,* 625 F.2d 1095 (3d Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816; *Mattivi v. South African Marine Corp.,* "*Huguenot*", 618 F.2d 163 (2d Cir.1980).

In the context of a Rule 50(b) motion for judgment n.o.v., the question whether the evidence was sufficient to have warranted submission of the case to the jury or to support the jury's verdict is a question of law which does not involve the district court's discretion. *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.,* 630 F.2d 250 (5th Cir.1980); *Morelock v. NCR Corp.,* 586 F.2d 1096 (6th Cir.1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375; *Seven Provinces Ins. Co., Ltd. v. Commerce & Indus. Ins. Co.,* 65 F.R.D. 674 (W.D.Mich.1975). In ruling on a Rule 50(b) motion following return of a verdict, the Court does, however, have discretion, provided the evidence is legally insufficient to support the verdict, to direct the entry of a judgment n.o.v. or to order a new trial. Rule 50(b). See *Cone v. West Virginia Pulp & Paper Co.,* 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849 (1947); *Stonehocker v. General Motors Corp.,* 587 F.2d 151 (4th Cir.1978).

The courts generally take the position that it is proper to grant a Rule 50(b) motion for judgment n.o.v. only in limited circumstances. *Symons v. Mueller Co.,* 493 F.2d 972 (10th Cir.1974). The motion is granted cautiously and sparingly [*Treadway Cos., Inc. v. Brunswick Corp.,* 364 F.Supp. 316 (D.N.J.1973); *Fireman's Fund Ins. Co. v. Videfreeze Corp.,* 68 F.R.D. 484 (D.Vi.1975), *aff'd in part, rev'd in part other grounds,* 540 F.2d 1171 (3d Cir.1976), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770], particularly where the movant is the party having the burden of proof. *Fireman's Fund Ins. Co. v. Videfreeze Corp.,* 540 F.2d 1171 (3d Cir.1976), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770; *Posttape Assoc. v. Eastman Kodak Co.,* 68 F.R.D. 323 (E.D.Pa.1975), *rev'd other grounds,* 537 F.2d 751 (3d Cir. 1976). A court in the Fifth Circuit can direct a verdict or grant judgment n.o.v. in a Jones Act case only when there is a complete absence of probative facts supporting the nonmovant's position. *Gaspard v. Taylor Diving & Salvage Co.,* 649 F.2d 372 (5th Cir.1981); *Boeing v. Shipman,* 411 F.2d 365 (5th Cir.1969); *Allen v. Seacoast Products, Inc.,* 623 F.2d 355 (5th Cir.1980).

■ The determination whether a claimant has proved a sufficient connection with water-borne or vessel-related activities to invoke jurisdiction as a seaman under the Jones Act is a mixed question of law and fact. *Holland v. Allied Structural Steel Co., Inc.,* 539 F.2d 476 (5th Cir.1976); *Offshore Company v. Robison,* 266 F.2d 769 (5th Cir.1959). Although seaman status is ordinarily a question to be resolved by the trier of fact, a court may properly refuse to submit the issue to the jury where the only rational inference to be drawn from the evidence is that the claimant was not a seaman. *Holland, supra; Owens v. Diamond M Drilling Co.,* 487 F.2d 74 (5th Cir.1973). As the Fifth Circuit noted in *Barrett,* seaman status may be determined by summary judgment in the appropriate situation:

Thus, we have held that 'where the facts establish *beyond question as a matter of law* [the lack of seaman status] ... a court ... may, in the proper case, hold that there is no reasonable evidentiary basis to support a jury finding that the injured person is a seaman ... under the Jones Act.'

*Barrett,* p. 1074, citing *Guidry v. Continental Oil Co.,* 640 F.2d 523 (5th Cir. 1981).[1] *See also Beard v. Shell Oil Co.,* 606 F.2d 515 (5th Cir.1979).

*Seaman Status*

The Court next addresses the defendant's contention that Harold Ward was not a seaman and its assertion that there was a "complete absence of probative facts" to support a jury finding of seaman status. *Boeing v. Shipman,* 411 F.2d 365 (5th Cir. 1969). The traditional test for seaman status under the Jones Act[2] was set forth in *Offshore Co. v. Robison,* 266 F.2d 769 (5th Cir.1959), requiring that the employee be assigned "more or less permanently" to a vessel and that he contribute to the mission and function of the vessel.[3]

In addition, it must be proven that the employee performed a significant part of his work aboard the vessel, with "at least some degree of regularity and continuity." *Barrett, supra; Keener v. Transworld Drilling Co.,* 468 F.2d 729, 732 (5th Cir.

1972). *See, e.g., Barrios v. Engine & Gas Compressor Services, Inc.,* 669 F.2d 350, 353 (5th Cir.1982); *Holland v. Allied Structural Steel Co.,* 539 F.2d 476, 484 (5th Cir.1976). The Fifth Circuit has also described the necessary relationship as one "evincing a vessel relationship that is substantial in point and time and not merely spasmodic." *See, e.g., Bertrand v. International Mooring & Marine, Inc.,* 700 F.2d 240 (5th Cir.1983). In perhaps the broadest description, the Fifth Circuit stated: "[T]he permanency requirement is, we think best understood as indicating that in order to be deemed a 'seaman' within the meaning of the Jones Act 'a claimant [must] have more than a transitory connection' with a vessel or a specific group of vessels." *Barrett,* citing *Ardoin v. J. Ray McDermott & Co.,* 641 F.2d 277 (5th Cir. 1981).

Circuit Judge Davis commented in *Barrett:*

For over twenty-five years, since 1959, the *Robison* test has stood in this circuit as the test for whether the status question should go to the jury, and also for the corollary question, whether the evidence of crew member status is sufficient to support a jury verdict. It has been cited more than ninety-five times, relied on in innumerable other unpub-

---

1. Footnote 10 of *Barrett,* referring to courts that have decided seaman status on motions, also cites *Longmire v. Sea Drilling Corp.,* 610 F.2d 1342 (5th Cir.1980); *Bouvier v. Krenz,* 702 F.2d 89 (5th Cir.1983); *White v. Valley Line Co.,* 736 F.2d 304 (5th Cir.1984).

2. Any *seaman* who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in

such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

46 U.S.C. § 688 (emphasis added).

3. In the often-cited words of Judge Wisdom:

[T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

*Robison,* 266 F.2d at 779.

lished circuit and district court opinions, and considered a lighthouse by both plaintiffs' and defendants' counsel in compromise negotiations.

But practitioners and courts alike have struggled with the myriad of requirements for finding seaman status. As a result of the quest for a bright-line rule, the Fifth Circuit modified *Robison* in the heralded decision, *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067 (1986).

The facts of *Barrett* are worth reciting for purposes of comparison with the case at bar. Jethro Barrett, an employee of Tilden J. Elliott Contractor, Inc., performed services as a welder's helper under a 1979 contract between Tilden and Chevron, U.S.A., Inc. The Tilden crew was assigned to remove old parts and to fabricate and attach new parts on a caisson. For approximately one year prior to the accident, Mr. Barrett was dispatched to different platforms in Chevron's Bay Marchand Field located in the Gulf of Mexico off the Louisiana coast. According to Mr. Barrett's testimony, seventy to eighty percent of his work was performed on platforms where no auxiliary vessel was needed. Because of the small size of the caisson involved at the accident site, however, a jack-up barge was positioned alongside the caisson in order to provide space on which the necessary equipment and materials for the Tilden crew could be placed and to provide a work area for the crew. In the course of this particular mission, Mr. Barrett spent seventy to eighty percent of his time on the jack-up barge assisting in measuring and fabricating new pipe sections. While being transferred from a transport vessel to the jack-up barge in a personnel basket, Mr. Barrett injured his back. On such facts, the Fifth Circuit concluded:

> *Whether Barrett was a crew member should have been determined in the context of his entire employment as a welder's helper with Tilden J. Elliott Contractor, Inc.* The record reveals that Barrett's employment duties as a welder's helper in Chevron's Bay Marchand Field did not significantly change during the term of his employment.

> Thus, *consideration of Barrett's vessel-related duties during a period shorter than the entire term of his employment with Elliott is unwarranted.* Accepting Barrett's testimony as true, during his one-year employment for Elliott he performed seventy to eighty percent of his work on platforms and no more than twenty to thirty percent of his work on vessels. Because he did not perform a substantial portion of his work aboard a vessel or fleet of vessels, he failed to establish that he was a member of the crew of a vessel.

*Barrett*, p. 1076 (emphasis added).

Thus, *Barrett* requires seaman status to be determined in the context of the worker's entire employment with his current employer. *See also Longmire v. Sea Drilling Corp.*, 610 F.2d 1342 (5th Cir. 1980), cited with approval in *Barrett*, p. 1075 (involving a "context of his entire employment" analysis). In *Longmire*, the plaintiff was employed as a floor hand or roughneck on an offshore drilling platform. He ate and slept on a tender vessel, which was anchored alongside and connected to a drilling platform by a gangway. The plaintiff in *Longmire* performed some duties on the tender, "such as general maintenance, moving supplies to or from the drilling platform, unloading and loading supply boats, and fixing the pumps for the drilling operation located on the tender." 610 F.2d at 1345.

> It can hardly be said that Longmire's incidental activities aboard the tender—maintenance, moving supplies to and from the drilling platform, and stowing the anchor chain—were sufficient, when viewed in the context of his entire employment as a member of the drilling crew, to amount to performance of a significant part of his work aboard the ship with ... some degree of regularity and continuity.

610 F.2d at 1347. The Fifth Circuit, looking to the totality of the claimant's duties with his employer, held as a matter of law that Longmire was not a seaman.

*Case at Bar*

The evidence presented at trial was essentially undisputed. Chevron U.S.A., Inc. contracted to engage Reeled Tubing's services to wash sand out of existing wells in the Gulf of Mexico. In order to perform this operation, Chevron also contracted with Airies Marine, Inc. to provide a jack-up boat for the operation. On the morning of August 24, 1982, employees of Reeled Tubing, Airies Marine and Chevron met in Leesville, Louisiana, to load Reeled Tubing equipment onto the RAM I and begin the project of working over Chevron's satellite well, located approximately one and one-half miles into the Gulf of Mexico.

Harold Ward was a coiled tubing helper, employed by Reeled Tubing. His job involved setting up the injector head used for sand washing oil wells. More than eighty percent of his work occurred in the Reeled Tubing Company shop, on land jobs, and on fixed platform jobs where vessels would rarely, if ever, be used. The only type of coiled tubing job that required work aboard a vessel was a satellite operation, where the fixed structure was too small to accommodate the coiled tubing equipment. In this case, a lift-type barge was positioned next to the satellite in order to provide a storage area for the equipment. Even in a satellite-type situation, almost all of Harold Ward's work was done on the satellite structure, rather than on the jack-up barge; approximately eighty percent of his work was done on the satellite, and twenty percent on the vessel. Thus, only about five percent of Mr. Ward's overall work was done on a vessel.

It was established at trial that Harold Ward's primary job on the day of the accident was to assist in sand washing a well on the fixed structure, and his work on the vessel was only incidental to achieving the primary purpose. A separate crew, employed by Airies Marine, Inc., consisted of a captain and a deck hand on board the jack-up barge. The Airies crew navigated the vessel, maintained the engines, handled the lines, cooked the meals, and raised and lowered the legs of the vessel. Neither Harold Ward nor any of the members of the Reeled Tubing crew handled lines, navigated the vessel, kept a lookout, or performed any vessel-related duties. While the vessel was traveling to the satellite, Harold Ward and the rest of the Reeled Tubing crew performed no duties on board the vessel; clearly, Mr. Ward was only a passenger aboard the jack-up barge.

Viewing the evidence in the light most favorable to plaintiff, the Court notes that the jack-up barge was necessary in order for the Reeled Tubing crew to sand wash the oil well on the satellite platform; Mr. Ward would have eaten and slept aboard the vessel; and he would have performed at least some of his work aboard the jack-up barge, including hooking up hydraulic hoses and going back and forth between the satellite and the vessel to bring tools and other equipment to the structure. In addition, Reeled Tubing's equipment was kept aboard the vessel, including the power pack, the coil of tubing, and the hydraulic unit which propelled sea water into the oil well.

Considering the mandate of the *Barrett* case, this Court feels compelled to hold that Harold Ward was not a seaman, and there was "a complete absence of probative facts" to support a jury finding that he was a seaman. *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969). *Barrett* quantifies the test for seaman status in a manner that is here unfavorable to Mr. Ward. During the year Mr. Barrett worked as a welder's helper in Chevron's Bay Marchand Field, he spent as much as twenty to thirty percent of his time working aboard vessels; however, in the eight-day period prior to the accident, Mr. Barrett spent as much as seventy percent of his work time aboard the jack-up barge. The Fifth Circuit found that the district court was required to consider Mr. Barrett's vessel-related work during his entire one-year assignment as a welder's helper to Chevron's Bay Marchand Field. Harold Ward, decedent in the case at bar, spent a small percentage of his time working on vessels during his employment with Reeled Tubing, Inc., significantly less

**38**

than the twenty to thirty percent ruled insufficient as a matter of law in *Barrett*.

The plaintiff Ward argues that the assignment on the vessel RAM I constituted an essential change in his work location. This approach would permit seaman status to be analyzed in terms of his "new job." In *Barrett*, the court stated:

> If the plaintiff receives a new work assignment before his accident in which either his essential duties or his work location is permanently change, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new job.

*Barrett*, p. 1076.

■ The Court finds no merit to plaintiff's contention: neither his employer nor employment changed so as to affect the assessment of seaman status. "What is to be avoided is engrafting upon the statutory classification of a 'seaman' a judicial gloss so protean, elusive, or arbitrary as to permit a worker to walk into and out of coverage in the course of his regular duties." *Longmire*, 610 F.2d at 1347. Thus, in the absence of a clear change in a claimant's duties or work location, seaman status is to be determined "in the context of his entire employment with his current employer." *Barrett*, p. 1075; *Longmire*, 610 F.2d at 1347.

Accordingly, the Court GRANTS Reeled Tubing's motion for judgment n.o.v. and hereby ORDERS that the Judgment, originally entered in this matter be set aside. In the event that the Court's decision to order Judgment notwithstanding the verdict is reversed or vacated on appeal, the Court hereby CONDITIONALLY GRANTS defendant's motion for a new trial.