**POSTTAPE ASSOCIATES, Appellee,**

v.

**EASTMAN KODAK COMPANY, Appellant.**

**No. 75–2162.**

United States Court of Appeals, Third Circuit.

Argued March 10, 1976.

Decided June 17, 1976.

---

Henry T. Reath, Joseph M. Hankins, Duane, Morris & Heckscher, Philadelphia, Pa., for appellant.

Joseph G. Manta, Edward R. Paul, Alan Letofsky, Philadelphia, Pa., for appellee; LaBrum and Doak, Philadelphia, Pa., of counsel.

Earl W. Kintner, Jack L. Lahr, Marc L. Fleischaker, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., for Association of Cinema and Video Laboratories, Inc. as amicus curiae.

John C. Fontaine, New York City, Jay Kelly Wright, Washington, D. C., for National Association of Photographic Manufacturers, Inc. as amicus curiae; Hughes, Hubbard & Reed, New York City, of counsel.

Before VAN DUSEN and WEIS, Circuit Judges, and STERN, District Judge.

## OPINION OF THE COURT

JOSEPH F. WEIS, Circuit Judge.

In this case, we are required to evaluate the competing gravitational pulls of the Uniform Commercial Code and the law of torts in a claim for consequential damages arising from the sale of a defective product. We conclude that § 402A of the Restatement of Torts does not apply and that under the circumstances of this case the Commercial Code provides appropriate guidelines for proving an agreement between buyer and seller to limit damages resulting from negligence. Although the trial judge properly charged the jury on the applicability of trade usage to supplement the agreement, we reverse because of trial errors which precluded adequate consideration of that factor.

Plaintiff Posttape Associates was formed in September, 1970 to produce documentary films. Its first effort, scheduled for shooting in October, 1970 and release in April, 1971, was an unrehearsed motion picture of an encounter group, entitled "Childhood II." In preparation for the production, Richard Gibson, one of Posttape's principals, contacted two Kodak sales representatives who recommended the use of No. 7252 Ektachrome film for the venture. Subsequently, Gibson ordered 105 four hundred-foot rolls and followed his oral request with a written purchase order. On October 12, 1970, he picked up the film from the Kodak distributor. Each roll was individually packaged and each cannister and box bore the legend:

"READ THIS NOTICE

This film will be replaced if defective in manufacture, labeling, or packaging, or if damaged or lost by us or any subsidiary company even though by negligence or other fault. Except for such replacement, the sale, processing, or other handling of this film for any purpose is without warranty or liability. Since color dyes may change in time, this film will not be replaced for, or otherwise warranted against, any change in color."

The film was shot during a two and a half day period, beginning on October 16, 1970, and was sent to a Kodak-approved developer. During the developing process, scratches appeared on the film which made it commercially worthless. Kodak's attempts to treat the damaged rolls by special means were unsuccessful. As a result, Posttape was required to reshoot the sequences and the film did not reach the market until early 1972. In October, 1971, another film of the alleged same genre, entitled "Together," was released by another producer, was well received by the public, and amassed receipts of more than $3 million.

Alleging breach of warranty, negligence and strict liability, Posttape commenced this suit claiming damages for its increased costs and lost profits because of the defective film. The court ordered the issues of liability and damages to be tried separately. During the liability portion of the trial, Kodak attempted to show that the limitation of damages to replacement of film was a custom and usage of the trade. To establish Posttape's knowledge, it introduced the deposition of another of Posttape's principals, Martin Spinelli, stating that he knew

of the trade usage. The defense requested the trial judge to instruct the jury that the partnership should be thereby charged with this knowledge. The court refused the tendered point.

In another effort to demonstrate that Posttape was aware of the trade usage, Kodak sought to introduce evidence of Posttape's purchase of liability insurance covering loss from defective film. The court denied admission of this testimony on the ground of undue prejudice to the plaintiff.

The jury, in answers to special interrogatories on liability, found that:

1. Kodak had been negligent in the manufacture of the film;

2. the film had been in a "defective condition unreasonably dangerous to the property of plaintiff (including the film itself) at the time of its delivery to plaintiff;" and

3. neither by their intentions nor by the usage of trade at the time did the parties intend to limit Kodak's liabili-

ty for negligence or strict liability merely to replacement of the film.[1] The jury later awarded damages in the amount of $143,000.00. In due course, the district court denied defendant's motions for judgment n. o. v. and a new trial.[2]

The record contains adequate evidence from which the jury could find Kodak was negligent in the manufacture of the film, and it has conceded a breach of warranty. But the jury also found liability against Kodak under § 402A of the Restatement (Second) of Torts. We meet this issue first.

■ This is a diversity case, and the parties have agreed that Pennsylvania law applies. In *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966), the Pennsylvania Supreme Court adopted § 402A of the Restatement (Second) of Torts.[3] In a recent decision, *Berkebile v. Brantley Helicopter Corp.,* 462 Pa. 95, 337 A.2d 893 (1975), some members of that court questioned the necessity of proving an "unreasonably dangerous" condition, despite the language in the Restatement. However, since a majority of the

---

1. "Interrogatory No. 1, do you find that Defendant Eastman Kodak Company was negligent in the manufacture of the Eastman Ektachrome Commercial 7252 film? The answer is Yes.

    Interrogatory No. 2, do you find that the film in question was in a defective condition unreasonably dangerous to property of plaintiff, including the film, itself, at the time of its delivery to plaintiff, pertaining to the doctrine of strict liability? The answer is Yes. Interrogatory No. 3, do you find from the intentions of the parties and/or the usage of the trade that at the time of the sale of the film in question the parties agreed to the following language contained in the individual film boxes as well as on the film cannisters contained in the boxes:

    'Read this notice: This film will be replaced if defective in manufacture, labeling or packaging or if damaged or lost by us or any subsidiary company, even though by negligence or other fault. Except for such replacement, the sale, processing or other handling of this film for any purpose is without other warranty or liability. Since color dyes may in time change, this film will not be replaced for or otherwise warranted against any change in color.'

    The answer is No.
    Interrogatory No. 4, do you find from the intentions of the parties and/or the usage of

the trade that the parties agreed that the language printed on the film box limited defendant's liability for negligence to replacement of the film? The answer is No.
Interrogatory No. 5, do you find from the intentions of the parties and/or the usage of the trade that the parties agreed that the language printed on the film box limited defendant's liability in respect to the doctrine of strict liability to replacement of the film? The answer is No."

2. The district court has addressed various aspects of this case in two reported opinions: 387 F.Supp. 184 (E.D.Pa.1974) (denying plaintiff's motion for summary judgment); and 68 F.R.D. 323 (E.D.Pa.1975) (denying defendant's post-trial motions).

3. Section 402A provides:

    "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
    (a) the seller is engaged in the business of selling such a product, and
    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."

court has not rejected that element, it still is viable. *See Bair v. American Motors Co.,* 535 F.2d 249 (3d Cir. May 17, 1976) (Per Curiam), interpreting *Berkebile v. Brantley Helicopter Corp., supra.* The flaw in the film in no way made it a threat to person or tangible property. The product was defective and did not perform as expected, but by no stretch of the imagination could it be considered "unreasonably dangerous." There was no evidence from which a jury could reach that conclusion, and the trial court erred in submitting the question of § 402A liability. Accordingly, Kodak's motion for judgment on that count should have been granted.

More important here is the issue of whether the seller properly limited the amount of damages which it must pay to buyer notwithstanding the finding of negligence. We note at the outset that defendant does not seek complete exculpation, but instead desires to limit plaintiff's recovery. Though it is possible that an agreement setting damages at a nominal level may have the practical effect of avoiding almost all culpability for wrongful action, the difference between the two concepts is nevertheless a real one. *See Cyclops Corp. v. Home Insurance Co.,* 389 F.Supp. 476 (W.D. Pa.), *aff'd,* 523 F.2d 1050 (3d Cir. 1975). The distinction becomes more apparent in a situation which the damage level set is substantial rather than minimal, *e. g.,* the Warsaw Convention restricting recovery for death and injury caused by airline accidents.

■ The line of demarcation between the two types of agreements has significance here because of the findings needed to establish their existence. Pennsylvania permits parties to contractually relieve themselves from the consequences of negligent acts, but any agreement must spell out the intention of the parties with particularity. *Keystone Aeronautics Corp. v. R. J. Enstrom Corp.,* 499 F.2d 146 (3d Cir. 1974); *Neville Chemical Company v. Union Carbide Corporation,* 422 F.2d 1205 (3d Cir. 1970); *Employers Liability Assurance Corp.*

*v. Greenville Business Men's Assn.,* 423 Pa. 288, 224 A.2d 620 (1966).

We find no Pennsylvania cases which delineate the requirements necessary to establish an agreement for limitation of damages caused by negligence. Presumably in most cases the same rules should apply as in the exculpatory clause situation. However, in commercial sales transactions, at least those in which no personal injury or physical property damage is involved, the Uniform Commercial Code plays a predominant role in governing the relationships between buyer and seller. Since the parties to this case fall into that category, we turn to the Code for appropriate guidance, recognizing that there are problems engendered by the overlapping of tort and sales law.

Typical of the controversy generated by this propinquity is the lively scholarly debate about the proper scope of § 402A of the Restatement (Second) of Torts as opposed to the provisions of the Uniform Commercial Code. The superiority of § 402A to compensate the average consumer for personal injury or property damage from a defective product is commonly acknowledged. However, there is considerably less enthusiasm for its application in a commercial setting when the damages are consequential and arise from a non-dangerous impairment of quality of the product. In this context, even Chief Justice Traynor, an ardent advocate of § 402A under other conditions, has favored the provisions of the Uniform Commercial Code. *See Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). *Accord,* Titus, *Restatement (Second) of Torts Section 402A and the Uniform Commercial Code,* 22 Stan.L.Rev. 713 (1970); Speidel, *Products Liability, Economic Loss and the UCC,* 40 Tenn.L.Rev. 309 (1973). A contrary view was espoused by the New Jersey Supreme Court in *Santor v. A and M Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305 (1965). Pennsylvania has not yet made its position clear. *See Kassab v. Central Soya,* 432 Pa. 217, 246 A.2d 848 (1968); *Miller v. Preitz,* 422 Pa. 383, 221 A.2d 320 (1966). Murray, *Pennsylvania Products Liability: A Clarification of*

*the Search for a Clear and Understandable Rule,* 33 U.Pitt.L.Rev. 391 (1972).

The *Erie* light is not always a bright one and at times we must tread in uncertainty. But having come to a fork in the road, we must make a choice, though the signs may be difficult to read. The Code is there to be seen and we think the Pennsylvania courts would turn toward it were they deciding the case *sub judice.*

■ There seems to be no dispute that Pennsylvania law permits an agreement to restrict damages in circumstances such as those present here. Lacking an opinion of the Pennsylvania Supreme Court to the contrary, we believe that the legislative mandate of the Commercial Code, particularly §§ 2–719 and 1–201(3),[4] sets forth criteria for such an agreement whether the claim be in tort or contract.[5]

■ On a motion for summary judgment, the trial court held that the legend on the box of film was not so clear and unequivocal under Pennsylvania law as to support a judgment in favor of the defendant and that further amplification was required.

We find no error in this ruling. At trial, the judge properly charged the jury that usage of trade of which the parties are or should be aware gives particular meaning to and supplements or qualifies the terms of an agreement.

Section 2–719 permits individuals to limit their damages by agreement, and in its definition of "agreement," § 1–201(3) includes the course of dealing or usage of trade as "circumstances" to establish "the bargain of the parties in fact." § 1–205(3) provides that "any usage of trade . . . of which they are or should be aware give[s] particular meaning to and supplement[s] or qualif[ies] terms of an agreement." That a party is bound by a trade usage of which he "should be aware" implies that a limitation of damages may be imposed even if the parties did not explicitly and expressly negotiate it. The totality of the agreement, however, must include a provision, present in the trade usage, or otherwise expressed, that the limited remedy is an exclusive one. § 2–719(1)(b). *See* 1 R. Anderson Uniform Commercial Code § 2–719:7 (1970, Supp.1975).[6] If the limita-

---

4. 12A P.S. § 2–719 provides:

"(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

12A P.S. § 1–201(3) states:

" 'Agreement' means the bargain of the parties in fact as found in their language or by implication from other circumstances includ-

ing course of dealing or usage of trade or course of performance as provided in this Act (Sections 1–205 and 2–208). Whether an agreement has legal consequences is determined by the provisions of this Act, if applicable; otherwise by the law of contracts (Section 1–103). (Compare 'Contract'.)"

5. We thus confront an issue to which we referred, but were not required to meet, in *Neville Chemical Co. v. Union Carbide,* 422 F.2d at 1216 n.16. There are distinguishing factors between this case and *Keystone* and *Neville:*

1. The defect and its consequences here could reasonably be said to be within the contemplation of the parties—unlike the highly unusual circumstances in *Neville;*

2. The defect here posed no danger to property in contrast to the situation in *Keystone:* there is only commercial loss, not physical loss to property; and only the damages are limited, liability itself is not affected.

6. Since this case will be retried, we suggest that the following sentences in the charge given at the first trial be considered for possible amplification in light of our opinion:

"A usage of trade of which the parties are or should be aware gives particular meaning to and supplements or qualifies the terms of an agreement. Thus if you find that there was

tion is unconscionable or fails of essential purpose, the buyer may be relieved of its strictures. § 2–719(2) and (3).

Even though a party's actual knowledge is not essential to establish the existence of a trade usage, such evidence is obviously very important to the party asserting the custom. The defense efforts along this line were seriously impaired by two adverse rulings of the trial court.

Richard Gibson and Martin Spinelli owned all of the stock in Posttape, Inc. The corporation, in turn, was the general partner of Posttape Associates, a limited partnership formed to produce motion pictures. In the portion of his deposition read at the trial, Spinelli indicated that he had experience in producing movies. He also admitted knowledge of the legend on the film packages and of Kodak's position that its liability was limited to replacement of film. With these facts in the record, defense counsel submitted to the court a point for charge that, as a matter of law, Spinelli's knowledge was imputable to the plaintiff. The trial court refused the point, expressing some dissatisfaction with the phraseology, but permitted counsel to argue the matter to the jury. However, the charge was devoid of any reference to Spinelli, his position with Posttape Associates, or his knowledge of the limitation.

■ A trial judge is not required to adopt the exact wording of a point for charge submitted by counsel, *James v. Continental Insurance Co.*, 424 F.2d 1064 (3d Cir. 1970); but if an important issue is timely called to his attention, he should instruct the jury on that matter. 9 C. Wright & A. Miller, Federal Practice and Procedure § 2552 (1971). Mere permission to counsel to argue the legal principle is not sufficient because it is the judge who gives the law to the jurors, not the lawyers.

Spinelli, a fifty-percent owner of Posttapes, Inc.,[7] the general partner of Posttape Associates, was in charge of the production of the motion picture. He and Gibson were the only two active persons in the management and operation of Posttape Associates; and, for all practical purposes, they were Posttape, Inc. Realistically, because of the interweaving between the partnership and the corporation, Spinelli's knowledge was as much the knowledge of Posttape Associates as it was of Posttape, Inc. Consequently, the jury should have been instructed that Spinelli's knowledge was attributable to Posttape Associates in the same manner as a partner. *See* 59 P.S. §§ 34 and 193; *Estate of Kerchner v. Pennsylvania Liquor Control Board*, 4 Pa. Cmwlth. 247, 285 A.2d 891 (1971). The court's failure to enlighten the jurors on this point gave them no standard by which to evaluate Spinelli's statements or to determine their relevance to the case—a matter important to the finding of an agreement.

■ We turn now to the exclusion of evidence of insurance coverage. Richard Gibson, the other owner of Posttape, Inc., purchased insurance indemnifying Posttape Associates against, *inter alia,* defective film. Aware of this fact, Kodak attempted to introduce and develop this evidence at trial for purposes of:

"[showing] that Posttape had actual knowledge of the custom of film manufacturers limiting their liability to replacement of the limitation of liability clause [and]

"[attacking] Mr. Gibson's credibility in that he had stated he had no knowledge of the custom or the limitation."

The court excluded the evidence stating that it would be overly prejudicial to plain-

---

an agreement, you may find that the agreement as suggested by its language or by implication including usage of trade limits plaintiff's recovery to replacement of the film." (NT 601)

    \*    \*    \*    \*    \*    \*

"In order for a limitation of liability to be effective, there must be (1) an agreement,

and (2) the parties must expressly agree that the limitation of remedy which here is replacement of film is the exclusive remedy." (NT 616)

7. We assume that he was also an officer and director of the corporation.

tiff and that its probative value was low. We disagree.

■ Generally, evidence of liability coverage is not admissible when a party is accused of acting wrongfully because of the likelihood for spillover between insurance and inference of fault. Knowledge that a party is insured may also affect a verdict if the jury knows that some of the loss has been paid by insurance or that it would satisfy a judgment against a defendant. However, if the evidence is offered for other relevant purposes, it may be admitted. *See* Federal Rule of Evidence 411. Here, the proffered evidence was relevant to the knowledge of Gibson and Posttape Associates. It is doubtful that there would be any prejudice because the parties were both commercial entities, the injury was not likely to stir the emotions, and the existence of such coverage might have been so unusual that the purchase itself would have significance in the circumstances. The exclusion of this relevant evidence was far more prejudicial to the defense than its admission would have been to the plaintiffs.[8]

The failure to charge the jury on the effect of Spinelli's knowledge and the exclusion of the evidence on Posttape's insurance coverage both went to a critical item in the case: the plaintiff's knowledge of the trade usage. Cumulative errors on this important point are so serious that they require reversal.

To summarize then, we remand the cause for a new trial; but in view of the trial judge's thoughtful use of interrogatories, the issues on retrial will be limited. Kodak concedes a breach of warranty, and the record sufficiently justifies the jury's finding of negligence. Since the issue of § 402A will not be submitted to a jury, the only matter left for resolution with respect to liability is the agreement to limit the extent of damages. This issue may be submitted to a jury for answers to special interrogatories after an appropriate factual background has been presented.

After careful consideration of the damage phase of the case, we cannot say that the jury's determination was not affected by the evidence on liability. In the interest of fairness for both parties, we have concluded that it is preferable in these circumstances that the new trial include the amount of damages if it should be determined that the defendant is liable.

Kodak has raised a number of objections to rulings in the damage phase of the case, primarily relating to the testimony of plaintiff's expert. Since the same objections may recur on the retrial, it is appropriate to note our view that the rulings by the trial judge on such objections were within the scope of his discretion.

The judgment of the district court will be reversed and a new trial will be ordered limited to the determination of the existence of an agreement limiting damages. If that is answered in the negative, then there will be a new trial on damages.

---

8. The trial judge ordered that Gibson's testimony on insurance be given out of the presence of the jury. We approve this procedure which

produces an accurate record for review rather than mere speculation.