|  | Total No. | MTIS | Total No. | MTI | Total No. | IMMCO |
|---|---|---|---|---|---|---|
| (1) Shareholders | [1] | Joseph Penka (100%) | [10] | Penka (25%)<br>Craig (15%)<br>Lane ( 5%)<br>Junghans (5%) | [4] | Penka (46%)<br>Craig (8%)<br>Lane (8%)<br>Junghans (37%) |
| (2) Directors | [5] | Penka<br>Craig<br>Lane | [7] | Penka<br>Craig<br>Lane | [4] | Penka<br>Craig<br>Lane |
| (3) Officers | [4] | Craig (VP)<br>Lane (Sec.) | [5] | Craig (VP)<br>Lane (Sec.) | [5] | Craig (VP)<br>Lane (Sec.) |

**POSTTAPE ASSOCIATES**

v.

**EASTMAN KODAK CO.**

Civ. A. No. 72–1009.

United States District Court,
E. D. Pennsylvania.

March 27, 1978.

Joseph Manta, Philip A. Ryan, Philadelphia, Pa., for plaintiff.

Henry T. Reath, William J. Barker, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

This suit arises out of a sale of motion picture film by defendant Eastman Kodak Co. (Kodak) to plaintiff Posttape Associates (Posttape), a limited partnership formed to produce a documentary film. In the first trial of this case, the jury found that the film had been manufactured negligently and that the parties had not agreed to limit the manufacturer's liability to replacement of the film. We denied defendant's post trial motions. *Posttape Associates v. Eastman Kodak Co.*, 68 F.R.D. 323 (E.D.Pa. 1975). The Court of Appeals for the Third Circuit reversed our denial of defendant's motion for new trial and remanded the case to determine whether the parties had entered into an agreement limiting defendant's liability. *Posttape Associates v. Eastman Kodak Co.*, 537 F.2d 751, 758 (3d Cir. 1976). At the second trial, the jury found that the parties had agreed to limit defendant's liability for negligent manufacture of film and for breach of warranty to the replacement of film.[1] Plaintiff has now filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial. For the reasons that follow we will deny the motion.

Plaintiff has advanced four arguments in support of its motion. In addressing these arguments, we are mindful that the evidence must be viewed in a light most favorable to the party receiving the jury verdict. *Thomas v. E. J. Korvette, Inc.*, 476 F.2d 471, 474 (3d Cir. 1973). The motion for a judgment notwithstanding the verdict can be granted only where the evidence supports but one reasonable conclusion, while the motion for a new trial is entrusted to the sound discretion of the trial court. *Id.* at 474–75. "If the evidence in the record, viewed from the standpoint of the successful party, is sufficient to support a jury verdict, a new trial is not warranted merely because the jury could have reached a different result." *Gebhardt v. Wilson Freight Forwarding Co.*, 348 F.2d 129, 133 (3d Cir. 1965). With these principles in mind, we turn our attention to plaintiff's specific contentions.

1. The jury answered yes to the following special interrogatory:

Do you find from the evidence in this case that, at the time of the sale of the film in question, there was an agreement to limit plaintiff's remedy in damages for negligent manufacture of the film and for breach of warranty in the sale of the film to replacement of the film and that this agreement expressly provided that replacement of the film was to be plaintiff's exclusive remedy?

## I. *Trade Usage*

The parties agree that the provisions of the Uniform Commercial Code (Code), as adopted in Pennsylvania, control the disposition of the motion. Section 1–201(3) of the Code defines "agreement" as the bargain in fact between the parties "as found in their language or by implication from other circumstances including course of dealing or usage of trade . . . ." 12A P.S. § 1–201(3). At trial, defendant attempted to show that the agreement between the parties to the sale of the film included a term limiting the manufacturer's liability for faulty film to the replacement of the raw stock. In addition to relying upon the language printed on the side of film boxes and canisters,[2] defendant contended that this term was established by a usage in the commercial film industry. To prove this trade usage, defendant introduced a number of witnesses who testified to the existence of such a practice in the film industry as well as the reasons underlying its adoption.[3]

While defendant's evidence supports a finding that such a limitation was accepted and reasonable, the record does not include any specific instances of negligently manufactured film or the application of the limitation. Indeed, under cross-examination the witnesses were unable to recall any specific applications of the limitation. This absence of record evidence forms the basis for plaintiff's contention that defendant's proof failed as a matter of law to establish a trade usage. Plaintiff argues that the evidence only established Kodak's attempts to impose a limitation of liability. Trade Usage is defined in Section 1–205(2) as follows:

> A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question.

12A P.S. § 1–205(2). Focusing on this definition, plaintiff argues that usage as defined by "practice" and "method" necessarily connotes repeated applications of the limitation. Plaintiff reasons that only through repeated applications of the limitation can a buyer know or be expected to know that a trade usage exists. Before a trade usage could be established under plaintiff's theory, the record would have to reflect the repeated assertion of claims against Kodak and the invocation of the limitation by Kodak in response to these claims. Plaintiff notes that because of the rarity of film problems, there were no instances of application of the limitation on the record. Plaintiff concludes, therefore, that defendant's evidence could not have established a trade usage.

While plaintiff's theory is not without appeal, we must reject it. Although the

---

**2.** The limitation, which appeared on all film packaging, provided:

READ THIS NOTICE

This film will be replaced if defective in manufacture, labeling, or packaging, or if damaged or lost by us or any subsidiary company even though by negligence or other fault. Except for such replacement, the sale, processing, or other handling of this film for any purpose is without warranty or liability. Since color dyes may change in time, this film will not be replaced for, or otherwise warranted against, any change in color.

**3.** Defendant's witnesses at trial included Kodak employees, a film maker, a film processor, and an insurance agent. They all testified that it was customary in the film industry for the manufacturer to limit its liability to the replacement of the faulty film. They agreed that such a practice was accepted by manufacturer and user alike because of special problems unique to the film industry. The theory was that since the magnitude of projects undertaken by commercial film makers varied tremendously and the manufacturer was often unaware of the scope of the undertaking, it was reasonable for each film maker to purchase insurance to protect against faulty film. This practice protected the manufacturer whose product constituted only a fraction of the cost of a commercial film. Further, it prevented the small commercial producer from paying the insurance premiums for the large producer by avoiding distribution of the insurance costs through the manufacturer. In essence, the practice allowed each producer or film maker to bear the insurance costs for its project. The limitation was also supported by the problems with the film itself. Prior to development, the film has to pass through so many hands and processes, that there is a vast potential for claims.

evidence does not show specific implementations of the limitation, there was abundant testimony that the usage did exist and that it was accepted by film makers as well as manufacturers and processors. Although plaintiff's argument focuses on practice and method, we believe that the key concept incorporated into Section 1–205(2) is "regularity of observance." *See* 12A P.S. § 1–205 Comment 5. This "regularity of observance" refers to the recognition and acceptance within the industry sufficient "to justify an expectation that it will be observed with respect to the transaction in question." 12A P.S. § 1–205(2); *see id.* Comment 7. In other words, repeated applications would be one manner in which to prove the requisite "regularity of observance", but a showing of industrywide recognition and acceptance of such a practice would also suffice. It is clear that the evidence at trial went beyond the unilateral imposition of a limitation by Kodak as suggested by plaintiff.

The definitions ascribed by the plaintiff to the words "method of dealing" and "practice" do not counsel against our view of "regularity of observance." "Practice" or "method of dealing" refer to the exact policy in question and do not in themselves require proof at trial of repeated applications of the usage sought to be invoked.

In sum, Section 1–205(2) requires that "[t]he existence and scope of such usage are to be proved facts." 12A P.S. § 1–205(2). This factual showing may be made by evidence of repeated applications of the term or of recognition and acceptance by members of the particular industry. We conclude that the testimony offered by defendant was sufficient to support a finding by the jury that at the time of the sale of the film to plaintiff there existed a trade usage limiting a commercial buyer's remedy to replacement of the negligently manufactured film.

## II.  *Exclusivity of the Limited Remedy*

Section 2–719(1)(b) provides:

Resort to a [limited] remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

12A P.S. § 2–719(1)(b). Plaintiff contends that defendant failed to satisfy this requirement because of its failure to show actual instances where the limitation was invoked by defendant. This argument tracks plaintiff's contention with respect to trade usage. There is, however, abundant testimony in the record showing that members of the industry recognized and accepted the replacement of the film as the sole remedy to the commercial user of film. Thus, for the same reasons stated above, we find that defendant introduced sufficient evidence to allow a reasonable jury to find that the return of the film constituted the plaintiff's sole remedy.

## III.  *Disclaimers for Lack of Due Care*

Plaintiff argues that the finding of defendant's negligence at the prior trial renders any disclaimer ineffective. *See* 12A P.S. § 1–102(3). This argument is dependent upon the characterization of the language printed on film boxes or canisters of the trade usage as a disclaimer rather than a limitation. This issue, however, was specifically addressed by the Court of Appeals which found that the replacement of the film constituted a limitation of remedy, rather than a disclaimer. *Posttape Associates v. Eastman Kodak Co., supra*, 537 F.2d at 755–56. The Court of Appeals concluded that Pennsylvania law did not prohibit such a limitation. *Id.*[4]

---

**4.** Plaintiff contends that the case of *Phillips Home Furnishings, Inc. v. Continental Bank*, 231 Pa.Super. 174, 331 A.2d 840 (1974) compels reconsideration of the Third Circuit's earlier ruling. In that case, the Superior Court of Pennsylvania refused to enforce a clause exculpating the bank "from all liability in connection with the use of a night depository facility." *Id.* at 842. This case was subsequently reversed

by the Supreme Court of Pennsylvania which held that the issue of the validity of the exculpatory clause was not properly before the Superior Court. *Phillips Home Furnishings, Inc. v. Continental Bank*, 467 Pa. 43, 354 A.2d 542 (1976). However, even assuming that the Superior Court's rationale serves as a forecast of things to come, a closer look at that case reveals several factors which distinguish it from

## IV. Failure of Essential Purpose and Unconscionability

Even though the defendant has established that the limitation was agreed to be the buyer's sole remedy, Sections 2–719(2) and (3) "provide that the buyer may be relieved of its strictures" "[i]f the limitation is unconscionable or fails of its essential purpose." *Posttape Associates v. Eastman Kodak Co., supra,* 537 F.2d at 756–57 *citing* 12A P.S. §§ 2–719(2) and (3). *See generally Fahlgren, Unconscionability: Warranty Disclaimers and Consequential Damage Limitations,* 20 St. Louis U.L.J. 435, 445–63 (1976). Plaintiff contends that the facts of this case demonstrate that the limitation both is unconscionable and fails of its essential purpose. If plaintiff can convince us to accept either of these arguments, the limitation will not be enforced.

■ Plaintiff asserts that its argument finds support in *Neville Chemical Co. v. Union Carbide Corp.,* 294 F.Supp. 649 (W.D. Pa.1968), *aff'd,* 422 F.2d 1205 (3d Cir. 1970). In *Neville,* the court refused to enforce a clause limiting the buyer's remedy to return of the purchase price. The buyer alleged that the exclusion was unconscionable because the defect in the resin which plaintiff had purchased was not discoverable until the resin had been resold to manufacturers and had been incorporated into finished products. In concluding that the limitation clause failed of its essential purpose, the court reasoned:

> Such a [limited] remedy would be wholly inadequate in the case of a latent defect not discoverable within a reasonable period after receipt of shipment. Like the fifteen day [notice] limitation, it is obviously designed to cover a situation where the defect is discoverable upon receipt of shipment, reasonable inspection and prompt discovery of defects. The parties

can be restored by prompt notification to the seller, return of the purchase price, and return of the material.

294 F.Supp. at 655. However, in this case, the latent nature of film defects is one of the reasons for adoption of the limitation and thus was clearly within the contemplation of the buyer and the seller. As the Court of Appeals noted: "The defect and its consequences here could reasonably be said to be within the contemplation of the parties—unlike the highly unusual circumstances in Neville." *Posttape Associations v. Eastman Kodak Co., supra,* 537 F.2d at 756 n. 5. We conclude, therefore, that rather than failing of its essential purpose the limitation of remedy clause operated exactly in the circumstance it was intended.

We now turn to the question of unconscionability which was reserved earlier in this case. *See Posttape Associates v. Eastman Kodak Co., supra,* 68 F.R.D. at 333 n. 10. While permitting the parties to limit remedies, Section 2–719(3) does not permit the limitation to operate in an unconscionable fashion. 12A P.S. § 2–719(3). Comment 1 to Section 2–719 provides that

> it is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be at least fair quantum of remedy for breach of the obligations or duties outlined in the contract. Thus any clause purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion . . . . .

*Id.* Comment 1. "The basic test [for unconscionability] is whether, in light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided

---

our case. First, the bank case involved exculpation as opposed to limitation. 331 A.2d at 842. Second, the use of the night depository facility resulted in a bailment which precludes the bailee from disclaiming liability for his negligence. *Id.* at 842–43. Third, in refusing to enforce the exculpatory clause, the Pennsylvania Superior Court relied upon the special nature of the bank-customer relationship and the important public service obligation shouldered by the banks. *Id.* at 843–45. These distinctions cause us to decline to reconsider the earlier Court of Appeals' holding that the replacement of film amounted to a lawful limitation of remedy clause under Pennsylvania law.

as to be unconscionable under the circumstances existing at the time of the making of the contract." *Id.* § 2–302 Comment 1.

█ The testimony at trial supporting the adoption of the trade usage illustrates the reasonableness of the limitation agreed to by the parties. Comment 3 to Section 2–719 notes that limitation of remedy clauses "are merely an allocation of unknown or undeterminable risks." *Id.* § 2–719 Comment 3; *see* K & C, Inc. v. Westinghouse Electric Corp., 437 Pa. 303, 263 A.2d 390 (1970). It is the "unknown or undeterminable risks" which justify the utilization of a limitation in the film industry. Not only are the risks difficult to assess because of the latent nature of any film defect, but also because usually the seller is not aware of the scope of the commercial film maker's undertaking. In an industry where the undertaking may vary from a multi-million dollar extravaganza to a low-budget instructional film, this practice is reasonable. *See* note 3 *supra.*

In these circumstances, the commercial film maker is not abandoned without protection but is free to purchase raw stock insurance as the plaintiff did in this case. This practice allows the commercial buyer, who is aware of the trade custom, to mold the protection to the scope of its project.

The fact that Kodak is a dominant force in a product market ruled by a few giants does not alter this conclusion. First, as testimony at trial showed, the protection offered by the limitation was not solely for the benefit of the manufacturers, but also extended to film processors or anyone else who might handle the film before it was developed. This belies plaintiff's contention that the limitation was a policy that the manufacturers alone attempted to force on the buyer. Further, Mr. Martin Spinelli, a fifty percent owner in Posttape, Inc., the general partner of Posttape Associates, was an experienced film maker who did not enter into this transaction with his eyes closed as is evidenced by the plaintiff's purchase of insurance which covered defects in the film. Indeed, Mr. Spinelli was well aware of the limitation, but testified that

he believed it was unenforceable. *See K & C, Inc. v. Westinghouse Electric Corp., supra* at 393 ("it is clear that the exclusion was not unconscionable here where the buyer was hardly the sheep keeping company with the wolves that it would have us believe").

In sum, the latent nature of film defects, the vast differences in use to which the film might be put, and the availability of an alternative form of protection lead us to conclude that the limitation of remedy is adapted to "the general commercial background and the commercial needs" of the film industry. We conclude, therefore, that the limitation is not unconscionable.