791 F.2d 932
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JUANA DABISH, Executrix of the Estate of SAM DABISH, JR., a
minor, Plaintiff-Appellant,
v.
CHARTER ARMS CORPORATION, Defendant-Appellee.
 84-1585
 United States Court of Appeals, Sixth Circuit.
 4/30/86
 
 AFFIRMED
 E.D.Mich.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 BEFORE: JONES and NELSON, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This case arises out of a tragic accident that occurred after a friend of the plaintiff's family left a loaded revolver on the kitchen table. A ten year old child picked up the revolver, believing it to be a toy, pointed it at young Sam Dabish, and pulled the trigger. The bullet severed Sam's spinal cord, rendering him a quadriplegic.
 
 
 2
 Sam's mother brought an action on his behalf against defendant Charter Arms Corporation, the manufacturer of the revolver. The case was tried to a jury, which returned a verdict in favor of Charter Arms. We shall affirm the judgment entered on that verdict.
 
 
 3
 * Plaintiff Dabish's principal contentions on appeal are that there was 'possible juror misconduct' and that the trial court abused its discretion by failing to hold an evidentiary hearing regarding such possible misconduct and by denying plaintiff's motion for a new trial or for relief from judgment.
 
 
 4
 During the voir dire examination of prospective jurors Mr. Meklin, the lawyer representing plaintiff Dabish, asked the panel these questions and received these answers:
 
 
 5
 'Has any member of the jury or member of your immediate family ever been involved in accident investigation, accident reconstruction or claims work?
 
 
 6
 Nobody has been involved in any claims work on the jury?
 
 
 7
 JUROR NUMBER 3: Do you mean for like car accidents?
 
 
 8
 MR. MEKLIR: Yes, they work in the capacity where somebody has a claim for injury or property loss.
 
 
 9
 JUROR NUMBER 3: My husband had a lawsuit for a car accident. Is that what you meant?
 
 
 10
 MR. MEKLIR: No. My question was: Has anybody ever worked where they would have to evaluate claims either for injury or property damage?
 
 
 11
 JUROR NUMBER 3: No.
 
 
 12
 MR. MEKLIR: Has anybody on the jury ever been involved in any kind of accident where they were injured?
 
 
 13
 JUROR NUMBER 7: Car accident.
 
 
 14
 MR. MEKLIR: When did that occur?
 
 
 15
 JUROR NUMBER 7: A few summers ago.
 
 
 16
 MR. MEKLIR: What type of injury did you have?
 
 
 17
 JUROR NUMBER 7: There was just minor injuries.
 
 
 18
 MR. MEKLIR: Was there any lawsuit brought?
 
 
 19
 JUROR NUMBER 7: No.
 
 
 20
 JUROR NUMBER 1: I just received an out-of-court settlement because I was bit by a junkyard dog.
 
 
 21
 MR. ARNONE: You have another hand.
 
 
 22
 JUROR NUMBER 9: Any type of accident where you were injured?
 
 
 23
 MR. MEKLIR: Yes.
 
 
 24
 JUROR NUMBER 9: About thirty-five years ago, I was shot with a pellet gun, was hit in the eye.
 
 
 25
 MR. MEKLIR: What kind of injuries did you sustain?
 
 
 26
 JUROR NUMBER 9: Lost the eye.
 
 
 27
 MR. MEKLIR: You have only vision in one eye, then?
 
 
 28
 JUROR NUMBER 9: Yes.
 
 
 29
 MR. MEKLIR: That is a serious loss. Would you in any way be affected in terms of feeling sympathy for my client who, by the way, has suffered a tremendous injury, because, just because of your past experience, without regard to the other evidence that may be brought out?
 
 
 30
 JUROR NUMBER 9: I would be objective.'
 
 
 31
 Later in the voir dire the lawyer for defendant Charter Arms asked the panel '[h]as any member of the jury or prospective juror ever had a lawsuit filed against them (sic)?' There was no response to this question.
 
 
 32
 At the end of the trial, after the jury had retired and conducted its deliberations, the bailiff received a note from the foreman saying that the jury had reached a verdict. The lawyers were summoned by telephone, and while their return was being awaited the bailiff received a second note from the foreman. It said 'May I see you?'
 
 
 33
 Without the knowledge of the court, the parties, or the other jurors, the bailiff spoke to the foreman and was told that she had just learned that the husband of one the of jurors had a lawsuit that was to come up for trial soon. The jury panel had not been asked any questions on voir dire about spousal litigation, as opposed to 'accident investigation, accident reconstruction or claims work,' and the juror concerned had seen no reason to mention her husband's lawsuit earlier. That judgment does not seem unreasonable, particularly in view of counsel's express statement to the jury that he was not inquiring about Juror Number Three's husband's car accident lawsuit.
 
 
 34
 The bailiff reported her conversation to the trial court, who asked the bailiff to tell counsel for the parties what the foreman had said. The bailiff then advised counsel that 'Mrs. Brooks (the foreman) indicated that after the jury deliberations were over with and after they had filed all the information necessary, one of the other jurors mentioned that her husband has a pending case that was coming up July 9. She said she didn't state what court, what type of case. I have no idea what exactly it involved and neither does she and that is it.'
 
 
 35
 The court then asked counsel if they saw 'any reason to get excited about this,' or had 'any suggestions as to what to do . . ..' The plaintiff's lawyer responded 'I don't know. I wish we had a couple of alternatives. Use your crystal ball.'
 
 
 36
 The court subsequently invited the plaintiff's lawyer to step outside to talk to his client, which the lawyer did. He returned five minutes later and said 'I am tempted to ask for a mistrial.' The court asked '[o]n what basis?' The lawyer responded '[o]n the basis that had we had that information, we may have conducted our voir dire in another manner.' The court suggested, in response, that there was no indication that the juror's husband's lawsuit had any effect on the jury's deliberations. Plaintiff Dabish's lawyer then moved for a mistrial, and the court denied the motion. Counsel for defendant Charter Arms said he had been going to ask the court to inquire of the juror, and the court responded '[n]o. I see no reason to do that. There is nothing that has been indicated to the court on the recitation made that the court feels would dictate the necessity of any inquiry.'
 
 
 37
 The jury then returned its verdict for defendant Charter Arms. The trial court denied a subsequent motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. In response to the plaintiff's contention that the court had erred in refusing to grant the motion for a mistrial, the court wrote that it did not believe the incident involving the juror's husband's lawsuit denied plaintiff a fair trial:
 
 
 38
 'In the absence of exceptional circumstances, a new trial is generally not warranted by the inadvertent failure of a juror to disclose other actions or claims unless the losing party establishes prejudice in the sense that the juror was improperly influenced by the undisclosed action. This is particularly true when the failure to disclose was inadvertent. [Citations omitted.] Plaintiff has at no time alleged exceptional circumstances or improper influence.'
 
 II
 
 39
 We do not believe that the trial court abused its discretion in refusing to order a new trial. This case is governed, we believe, by McDonough Power Equipment Inc. v. Greenwood, ---- U.S. ----, 104 S.Ct. 845 (1984), a 'products liability' case analagous to this one. McDonough involved the failure of a juror to respond affirmatively to a question on voir dire seeking to elicit information about previous injuries to members of the juror's immediate family. The United States Supreme Court, speaking through Justice Rehnquist, expressed itself as follows:
 
 
 40
 'We hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause.' ---- U.S. at ----, 104 S.Ct. at 850.
 
 
 41
 Plaintiff Dabish failed to pass the first part of this test. There has been no showing here that 'a juror failed to answer honestly a material question . . ..' Plaintiff Dabish's real complaint is that the prospective juror failed to volunteer an answer to a question that was never asked. This is not a basis for declaring a mistrial.
 
 III
 
 42
 Plaintiff Dabish's other claims of error are equally without merit.
 
 
 43
 First, the trial court is claimed to have abused its discretion in failing to let the jury see a movie on 'a day in the life of' the injured child. The trial court reviewed the film, but decided that it was cumulative to testimony already given, was unfairly prejudicial, and constituted inadmissible hearsay. This court has not reviewed the film, but the film would obviously have constituted hearsay. Any error in refusing to allow the jury to see the film, whether inadmissible hearsay or not, was necessarily harmless: the film did not relate to the issue of liability, and that was the only issue the jury reached.
 
 
 44
 Second, plaintiff Dabish says that the trial court abused its discretion in denying a request to instruct the jury that the negligence of a corporation's officers is the negligence of the corporation. In this connection plaintiff relies on Posttape Associates v. Eastman Kodak Co., 537 F.2d 751 (3rd Cir. 1976). In that case the knowledge of an individual who was a 50% owner of a corporation that was a general partner was imputable to the partnership, but the trial court refused so to instruct the jury. The Court of Appeals for the Third Circuit held that this was reversible error: 'the jury should have been instructed that Spinelli's knowledge was attributable to Posttape Associates in the same manner as a partner.' 537 F.2d at 757. The court evidently did not think that the significance of 'the interweaving between the partnership and the corporation' would be self-evident to the jury. Here we have no such 'interweaving' between different forms of business organization, and we are aware of no complexity that would have required the jury to receive elucidation it failed to get.
 
 
 45
 Plaintiff Dabish also complains of a miscellany of other evidentiary rulings. We have examined each of these claims carefully, and we find no merit in any of them.
 
 
 46
 The judgment of the trial court is AFFIRMED.