# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 12, 2011 Session

## LARRY E. PARRISH, P.C. v. DODSON ET AL.

### Appeal from the Chancery Court for Lincoln County
### No. 13039      J. B. Cox, Chancellor

### No. M2011-00349-COA-R3-CV - Filed September 29, 2011

The former attorney of a client filed a seldom used "In Rem Complaint to Trace and Recover Res" to prosecute a chose-in-action assigned by the former client in payment of attorney's fees. The funds to be recovered by this action were being held in trust by another law firm following the resolution of a separate, but related action. The former client filed an answer asserting that the assignment was unconscionable, thus, unenforceable; she also filed a counter-claim against her former attorney for breach of contract and breach of fiduciary duty. Both parties filed motions for summary judgment. The trial court found that certain provisions of the assignment were unconscionable and others were not and granted partial summary judgment to each party. Finding that the provision awarding $50,000 to the plaintiff was not unconscionable, the trial court granted a judgment in the plaintiff's favor for that amount plus interest. The trial court also awarded the former client $10,000 in attorney's fees upon a finding that she was the "prevailing party" in this action. Both parties appeal. We reverse upon a finding that there are genuine issues of material fact that preclude a grant of summary judgment to either party and remand for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Timothy T. Ishii, Nashville, Tennessee, for the appellant, Nancy J. Strong.

Kevin W. Weaver, Cordova, Tennessee; and Megan McCune, Memphis, Tennessee, for the appellee, Larry E. Parrish, P.C.

**OPINION**

This appeal arises from separate but related actions and three previous appeals; the only common element being the defendant/counter-claimant, Nancy J. Strong. The procedural history, part of which we must address here, can best be described as a decade long morass, which arose from a partnership dispute.

In the initial action, a partnership dissolution action by Paul Braden against Nancy Strong, Ms. Strong was represented in the trial court by attorney John Baker, III. Being dissatisfied with the ruling of the trial court in the partnership dissolution action, Ms. Strong terminated Mr. Baker's services and retained attorney Donald Capparella of Dodson, Parker, Behm & Capparella, P.C., to represent her on appeal. Mr. Capparella represented Ms. Strong in not one but two appeals involving the partnership dispute. *See Braden v. Strong*, No. M2004-02369-COA-R3-CV, 2006 WL 369274 (Tenn. Ct. App. Feb. 16, 2006)[1]; *Braden v. Strong*, No. M2008-00216-COA-R3-CV, 2009 WL 276737 (Tenn. Ct. App. Feb. 3, 2009).

During the pendency of the first appeal in *Braden v. Strong*, Ms. Strong hired attorney Larry Parrish of Larry E. Parrish, P.C., to file a legal malpractice action against John Baker. Ms. Strong entered into a retainer agreement with Mr. Parrish on December 30, 2004. On January 11, 2005, the legal malpractice action against John Baker and his law firm[2] was filed. Pursuant to a scheduling order entered in that action, discovery was to be completed by November 15, 2005.

---

[1]In the first appeal of this dispute, this court ruled as follows:

The order of the trial court is affirmed as to the finding that the construction business was an implied partnership, that this partnership be dissolved and assets divided twenty-five percent (25%) to [Paul Braden], twenty-five percent (25%) to [Nancy Strong], and fifty percent (50%) to [Eddie Braden], and as to the dissolution of the remaining two partnerships effective January 12, 2004. . . . The trial court's order is, in all other aspects, reversed and remanded for consideration of capital account adjustments for [Paul Braden and Nancy Strong], for a complete accounting of the construction business, Braden Construction/Braden LLC, and for consideration of [Nancy Strong's] claims of breach of contract and breach of fiduciary duty for [Paul Braden's] exclusion of [Nancy Strong] from the Landscaping Concepts partnership.

*Braden*, 2006 WL 369274, at * 1.

[2]The complaint also alleged causes of action for negligence, breach of express contract, breach of implied contract, intentional misrepresentation, violations of the Tennessee Consumer Protection Act, and intentional infliction of emotional distress. *See Strong v. Baker*, No. M2007-00339-COA-R3-CV, 2008 WL 859086 (Tenn. Ct. App. Mar. 31, 2008).

During the pendency of the malpractice action against John Baker, both Ms. Strong and Mr. Capparella, her attorney in the partnership action, requested that Mr. Parrish stay the legal malpractice action pending the outcome of the appeal in the partnership dispute. Ms. Strong also notified Mr. Parrish that she was concerned about her ability to finance two lawsuits at the same time due to the fact she was obligated to pay hourly fees to her attorneys in each case.

On November 4, 2005, Mr. Parrish sent an email to legal counsel for John Baker suggesting an agreed order for a stay; for reasons unexplained by this record, no stay was ever entered. Thereafter, Mr. Parrish continued to prosecute the legal malpractice action against Mr. Baker; however, as the record in *Strong v. Baker* reveals, Mr. Parrish failed to comply with deadlines in the scheduling order, most significantly the deadline to disclose expert witnesses by December 31, 2005. In August 2006, Mr. Parrish told Ms. Strong that he would file a motion with the trial court in the legal malpractice action to withdraw as her attorney unless he received payment of past due fees and reimbursement of advance expenses. She made a partial payment and, as of September 21, 2005, Ms. Strong had paid $38,371.92 in attorney's fees to Parrish.

Several months later, in February of 2006, John Baker filed a motion to summarily dismiss the legal malpractice action, asserting that his conduct had not breached the standard of professional practice for attorneys. In response to this motion, Mr. Parrish filed a motion on behalf of Ms. Strong to stay the proceedings, along with a response to the motion for summary judgment asserting that damages in the legal malpractice remained uncertain pending the decision of this court in the partnership dissolution action.[3] The trial court denied the motion to stay.

The cross motions for summary judgment were heard on August 23, 2006. At the time of the hearing, Mr. Parrish had failed to file an expert affidavit on behalf of Ms. Strong that addressed the standard of professional practice for attorneys. Following arguments, the court granted summary judgment to John Baker upon the finding there were no genuine issues of material fact due in principal part to the fact there was no expert testimony to establish a breach of the standard of care. Thus, Ms. Strong's legal malpractice claim against Mr. Baker was summarily dismissed.

On the same day as the dismissal of the legal malpractice claim, Mr. Parrish recommended to Ms. Strong that a motion to alter or amend be filed. During the same discussion, Mr. Parrish presented Ms. Strong with a document entitled "Assignment Of

---

[3]Three years later, the partnership dissolution action was concluded with the entry of a judgment in favor of Ms. Strong in the amount of $261,361.84 on March 9, 2009.

Chose-In-Action," pursuant to which Ms. Strong would be assigning the rights and entitlements from her suit in the partnership dissolution action to "secure payment and reimbursement of money advanced to defray costs and expenses" in accordance with the retainer agreement previously entered. It stated the "maximum principle indebtedness" from the assignment was $50,000. It also provided that if a dispute arose, the "prevailing party" would be assessed attorney's fees and costs. Whether Mr. Parrish advised Ms. Strong that she had the right to or should seek independent advice regarding the chose-in-action is disputed. Five days later, on August 28, 2006, Ms. Strong signed the chose-in-action without consulting an attorney and delivered it to Mr. Parrish.

As recommended by Mr. Parrish, a motion to alter or amend the summary dismissal of the malpractice action was filed; it was subsequently denied by the trial court. Ms. Strong appealed. This court affirmed the dismissal of her malpractice claim against Mr. Baker in October of 2008. *See Strong v. Baker*, 2008 WL 859086, at *1.

<u>THE COMMENCEMENT OF THE CASE ON APPEAL</u>

On March 16, 2009, Larry E. Parrish, P.C., filed its complaint to commence this action; the caption of which reads as follows:

LARRY E. PARRISH P.C.,
A TENNESSEE PROFESSIONAL CORPORATION
VS.
$116,316.35 ACCRUED INTEREST PLUS ACCRUING INTEREST
TRACEABLE TO VARIOUS PERSONS, INCLUDING RESPONDENTS,
IN POSSESSING DOMINION AND CONTROL
OF ANY PORTION OF THE $116,316.35
RES

DODSON, PARKER, BEHM & CAPPARELLA, P.C.
A TENNESSEE PROFESSIONAL CORPORATION, AND
NANCY J. STRONG
AN INDIVIDUAL

RESPONDENTS

-4-

The title of the Complaint reads as follows:

SWORN IN REM COMPLAINT TO TRACE AND RECOVER RES AND
OTHER EQUITABLE RELIEF, INCLUDING AN IMMEDIATELY ISSUED ORDER,
PURSUANT TO TENNESSEE RULES OF CIVIL PROCEDURE,
RULE 67.02 AND RULE 67.03, AND
FOR COSTS AND ATTORNEYS FEES

The In Rem Complaint by Larry E. Parrish P.C. ("the Corporation") set forth a claim that the Corporation was entitled to $116,316.35 (the "res") pursuant to the assignment of the chose-in-action by Ms. Strong.[4] The Corporation also sought, *inter alia*, an injunction precluding the law firm of Dodson, Parker, Behm and Capparella ("Dodson Parker") from dispersing $261,361.84, the proceeds from the partnership dissolution action which were being held by that firm. The Corporation also sought additional affirmative relief against Ms. Strong, Dodson Parker, and twenty John Does.

Although the Corporation sought affirmative relief from Ms. Strong and the firm of Dodson Parker, they were identified in the complaint as "non-party respondents." The Corporation did not prepare or file with the clerk any summons for service on Ms. Strong or Dodson Parker. Accordingly, no summons were ever issued or served.

Following a hearing on the Corporation's request for an injunction to preclude Dodson Parker from dispersing any of the proceeds from the partnership dissolution action, the injunction was granted. Subsequently, Dodson Parker was granted leave to disperse $82,249.40 to itself, the amount of the attorneys' fees the firm had earned in the partnership dispute, and it was permitted to transfer the remaining proceeds to the trust account of another attorney of Ms. Strong. Upon remittance of the remaining proceeds, Dodson Parker was dismissed with prejudice. Thereafter, the attorney holding the funds in trust was granted leave to withdraw, at which time the funds were deposited with the Clerk and Master of the Chancery Court of Lincoln County where they remain.

In the interim, although she was not served with a summons, Ms. Strong filed an Answer to the In Rem Complaint; she also filed a Counter-Complaint against the Corporation. In her Answer, Ms. Strong denied the Corporation's entitlement to the res

---

[4]During oral argument, in response to a statement from the panel commenting on the uniqueness of the initial pleading filed by Mr. Parrish on behalf of the Corporation, Mr. Parrish's attorney stated that Mr. Parrish often "thinks out of the box." No one disputed this statement.

claiming that Mr. Parrish violated numerous professional conduct rules in the procurement of the chose-in-action. In her Counter-Complaint, Ms. Strong asserted claims for legal malpractice, breach of contract, and violations of the Tennessee Consumer Protection Act.

The Corporation subsequently filed a motion to amend its complaint seeking to remove all references to the non-party respondents; however, there is no order in the record ruling on this motion. The Corporation then filed a motion to strike and a motion to dismiss Ms. Strong's Answer and Counter-Complaint, contending that Ms. Strong was not "a party" to the *in rem* action and that an *in personam* counter-claim could not be asserted in an *in rem* action. Ms. Strong filed a response. There are no orders in the record ruling on either of these motions.

Thereafter, the Corporation filed a motion for entry of a final judgment and disbursement of the res; it also moved to dismiss Ms. Strong's counterclaims for legal malpractice and violations of the TCPA. On August 13, 2009, Ms. Strong took a voluntary nonsuit of her counterclaims for legal malpractice and violations of the TCPA; an order of nonsuit was entered by the trial court on August 18, 2009. Ms. Strong's claim for breach of contract remained.

On August 21, 2009, the Corporation filed a partial nonsuit of its claim. A second notice of voluntary nonsuit without prejudice was filed on August 24, 2009. However, and again for reasons not explained by the record, the record before us does not contain an order of nonsuit.[5]

Both the Corporation and Ms. Strong subsequently filed motions for summary judgment and each party filed a response to the other's motion. Ms. Strong also filed a motion to dismiss and an amended motion to dismiss. The court heard arguments on all motions on November 3, 2009, after which the trial court took them under advisement. In an extensive Memorandum Opinion filed on March 23, 2010, the trial court made the following preliminary statement and set forth its findings:

> Moving quickly on to the remaining morass of pleadings, the Court is
> of the opinion that the case is more appropriately adjudicated via the

---

[5]Pursuant to Tenn. R. Civ. P. 41.01(1), but for a few exceptions stated in the rule, a plaintiff "shall have the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause and serving a copy of the notice upon all parties, . . ." However, subsection (3) of the rule expressly requires that notice of a voluntary nonsuit to dismiss an action without prejudice must "be followed by an order of voluntary dismissal signed by the court and entered by the clerk." *Id*. Because no order was entered voluntarily dismissing portions of the Corporation's claims, they have not been dismissed.

competing summary judgment motions. The Court has difficulty in analyzing the case in the appropriate context as all the parties have gone far afield of T.R.C.P. 56.03 in framing the issues for summary judgment by reliance on other affidavits, etc. Rather than rest on a technicality for adjudication of the res the Court will attempt to consider all the statements and affidavits pertaining to the competing summary judgment motions. The Court believes the following facts are undisputed as represented to the Court in Competing motions for summary judgment by the parties.

1. Parrish PC is a professional corporation whose members are licensed to practice law in the state of Tennessee.
2. Larry Parrish is the president of this professional corporation and acts as its agent.
3. Nancy Strong is a layperson not educated in the law.
4. December 30, 2004, Strong engaged Parrish PC to represent her in a subsequent lawsuit for legal malpractice filed in the Circuit Court of Lincoln County, Tennessee, Styled Strong v. Baker.
5. This employment was accomplished via a retainer agreement which include[s] the details of the employment, which was to be billed at an hourly rate, the terms of payment, and a client guide outlining the respective roles of the parties to the retainer agreement.
6. This agreement required Strong to keep $2000 in the PC trust account to be billed against by the PC and it outlined the obligation of Strong to make reimbursement for advances of expenses.
7. The client guide outlined the fiduciary nature of the relationship between Parrish PC and Strong.
8. Parrish PC billed pursuant to the retainer agreement in excess of $150,000.
9. Strong fell behind in her ability to keep current on the invoices provided her by Parrish PC.
10. During this time Strong paid to Parrish PC some monies for expenses and legal fees.
11. Strong v. Baker progressed forward during the time when Braden v. Strong was on appeal. The outcome of Braden v. Strong provided the avenue for recovery, if any, and value, if any, of the malpractice action against Baker.
12. During the progress of Strong v. Baker, Mr. Baker filed an affidavit as an expert to support his position that he had not violated the standard of care.
        . . . .

16. The Court announced a ruling from the bench on August 23, 2006 unfavorable to Strong.

17. An order memorializing this ruling was entered in September, 2006.

18. The failure to file a counter affidavit was fatal to the malpractice action as noted by the trial court and upheld by the court of appeals.

19. The date of the chose in action's execution was August 28, 2006.

20. The parties entered into the chose in action after discussions surrounding the outcome of Strong v. Baker.

21. Strong's initials appear on each and every page of the chose and her signature appears on the last page. Said signature is notarized.

22. No advice was given to Strong that she had a right to independent advice on the issue of the chose in action separate and apart from the malpractice action she was participating in.

23. The Court is relying on the chose as if rewritten here verbatim. It is incorporated by reference.

24. The chose was signed by Strong in Lincoln County, Tennessee on August 28, 2006.

25. Parrish PC is located in Memphis, Tennessee.

26. Ms. Strong was also represented by Don Capparella at the time of her execution of the chose for the purposes of pursuing Braden v. Strong to its conclusion.

27. Mr. Capparella advised Parrish PC to obtain a stay of the malpractice action while Braden v. Strong was on appeal.

28. The chose provides for the "prevailing party" to be assessed Attorney fees and costs.

29. The retainer agreement does not provide for attorney's fees or interest on collection.

30. Strong allowed Parrish PC to continue to represent her for the appeal of the grant of summary judgment of the trial court.

31. The appeal against Baker was similarly unsuccessful.

32. Any malpractice component to this action has been dismissed by Strong.

The above findings were then followed by the trial court's observations and determinations as stated below:

The sole issue for the Court's consideration is whether the "chose in action" is an unconscionable contract. The Court needs to be clear in this circumstance. The Court is not adjudicating a legal malpractice dispute. The Court is not adjudicating a fee dispute between lawyer and client. Parrish PC asserts a right to the funds pursuant to the language of the chose in action on the basis that it constitutes the parties understanding of their relationship to each other as of the date of its execution. Parrish claims a right to the res

-8-

pursuant to that contract. That contract alone is the only basis by which the Court could disburse the funds to any other entity than Ms. Strong.

Following a recitation of the legal principles to be applied when analyzing the issue of unconscionability, the trial court stated:

> This chose in action is best analyzed in the context of its procurement. The discussion regarding the chose in action occurred in the month of August 2006. At the time of the discussions Parrish PC represented Ms. Strong in the Strong v. Baker action. August 23, 2006 came without a chose in action contract and Parrish PC via Larry Parrish appeared to argue the summary judgment motions in the Baker case. At the time argument proceeded Parrish PC and its agent Larry Parrish knew that no expert affidavit had been filed in the case and that the case had not been stayed. Parrish PC argued the motion and lost. While at the courthouse, Parrish PC just happened to have a final draft of the chose in action for the consideration of Ms. Strong. There were discussions about what had happened that day and what would happen next. Ms. Strong had been on notice of the need to catch up on Parrish PC's billing as early as August 10, 2006. She was behind on billing as of the date of the discussions as well as the date she signed the contract. She did not sign the contract there at the courthouse and she had an opportunity to have the contract reviewed before signing it whether she took that opportunity or not. She was never advised that she could seek outside advice as to the propriety of the contract she was entering into, but she was under no direct pressure to sign the contract before leaving the courthouse.

> The contract is on its face unconscionable because it restricts the right of Ms. Strong to contest the appropriateness of the fee and leaves open ended the amount that might be recovered by [Parrish PC]. A person of common sense would not have traded these rights without an upside benefit. The upside benefit is impossible to see in the face of the trial court's ruling against Ms. Strong for not filing an affidavit in opposition to Mr. Baker's affidavit. Parrish PC enjoyed uneven bargaining power which was exacerbated by the circumstances of the loss of the underlying action by the inaction of Parrish PC. Whether it was malpractice is not for this Court to decide, the actions are circumstances surrounding the execution of the contract. Whether Parrish PC may be successful in an action for its fees is not before this Court.

> For the foregoing reasons the Court finds that the contract is unconscionable as a matter of law. The Court will not enforce its provisions.

Costs of the cause are adjudged against Parrish PC and counsel for Ms. Strong shall prepare an order consistent with this memorandum. The order shall contain language consistent with T.R.C.P. 54 that it is a final order.

This Court cannot say that in analyzing the facts and circumstances of the contract and how it came to be that the facts and circumstances are not so one-sided that Ms. Strong was denied the opportunity to make a meaningful choice. She had the opportunity to make a meaningful choice. She had other people to turn to between the time she was presented the document and the time that she signed it. It is not patently unconscionable that an individual would enter into a chose in action to pay less money in attorney fees than was owed. The contract is not unconscionable as a matter of law and Parrish PC's claim to $50,000 plus interest must be sustained.

This memorandum shall be reduced to an order format by the prevailing party. Pursuant to the chose in action contract, the Court must award attorney fee's. Costs of the cause are adjudicated against the non prevailing party and the order of judgment shall contain language consistent with T.R.C.P. 54 as it is a final order.

Pursuant to the directive in the last paragraph of the Memorandum Opinion, an order was entered that reads in pertinent part as follows:

This matter is before the Court upon three specific matters. The first is a Motion to Dismiss pursuant to Rule 12 by the Respondent, Motion for Summary Judgment by the Plaintiff and cross-motion/counter-motion for Summary Judgment by the Respondent.

The Court heard oral argument on all matters November 3, 2009 and has rendered its Memorandum Opinion March 23, 2010.

The Court finds in its Memorandum Opinion that the Motion to Dismiss pursuant to Rule 12 by Respondent Strong is overruled.

Further that the original Motion for Summary Judgment by the Plaintiff [Parrish, P.C.] is overruled consistent with the terms of the Memorandum Opinion as incorporated herein by reference.

The Court further finds upon review of the "Chose" that the portion awarding attorney's fees and interest was not unconscionable and find that the plaintiff, Parrish, P.C. is entitled to $50,000.00 plus interest.

The Court further finds that the Respondent's Motion for Summary Judgment is hereby sustained and as the prevailing party is awarded attorney's fees and the costs are taxed against the original Plaintiff, Parrish, P.C.

It is therefore

ORDERED that Respondent's Motion to Dismiss pursuant to Rule 12 is overruled and is a final order per Rule 54 T.R.C.P. Further, it is

ORDERED that Plaintiff's Motion for Summary Judgment is overruled and is a final order per Rule 54 T.R.C.P. Further, it is

ORDERED that Respondent's Motion for Summary Judgment is hereby sustained and the Court's Memorandum Opinion is incorporated herein by reference as if specifically set out verbatim and is a final order per Rule 54 T.R.C.P. Further, it is

ORDERED that the Court further finds upon review of the "Chose" that the portion awarding attorney's fees and interest was not unconscionable and find that the plaintiff, Parrish, P.C. is entitled to $50,000.00 plus interest. Further it is

ORDERED that upon application the Respondent [Ms. Strong] will be awarded attorney's fees. Costs are taxed to the Plaintiff, Parrish, P.C. for which execution may issue if necessary.

Thereafter, Ms. Strong filed her application for attorney's fees and discretionary costs. She also filed a Tenn. R. Civ. P. 54.02 motion to alter or amend the above order contending the trial court erred in awarding the Corporation $50,000 based upon the assignment, because it is unconscionable and, alternatively, asserting that she should be given a credit for $38,371.92 in fees that she previously paid the Corporation. In the final order that followed, the trial court awarded Ms. Strong $10,000 as a portion of the attorney's fees she incurred to defend this action in the trial court. She was also awarded discretionary costs. The court, however, denied her request for a credit of $38,371.92 for fees previously paid.

Ms. Strong then filed a timely notice of appeal. Shortly thereafter, the Corporation filed a motion before this court contending that the appeal should be dismissed for lack of jurisdiction. This was based on the Corporation's contention that Ms. Strong was not a party to the in rem action, insisting that she was merely a non-party respondent, and she could not perfect an appeal from an action to which she was not a party. On June 1, 2011, prior to oral arguments, we issued an order denying the motion to dismiss stating:

The appellee [the Corporation] asserts the appellant [Ms. Strong] was not a party to the proceedings in the trial court and thus lacks standing to initiate an appeal of the judgment. Having carefully reviewed both the appellee's motion and the appellant's response, we conclude that the appellant has standing and thus decline to dismiss the appeal.

Having denied the motion to dismiss, oral arguments were heard on July 12, 2011.

-11-

Our opinion in this matter follows.

## ANALYSIS

Both parties raise issues on appeal. Ms. Strong contends that the trial court erred in granting the Corporation's motion for summary judgment and awarding $50,000 to the Corporation. For its part, the Corporation contends the trial court erred in awarding attorney's fees to Ms. Strong as she was not the "prevailing party."

### I.
### MS. STRONG: A PARTY OR A NON-PARTY RESPONDENT

As mentioned earlier, the Corporation filed a motion to dismiss the appeal prior to oral argument. The motion to dismiss was based on the Corporation's assertion that Ms. Strong is not a party to this action, merely a "non-party respondent"; thus, it asserted, she has no right to challenge the Corporation's efforts to collect the res. We denied the motion by order entered June 1, 2011; we did not explain our reasoning in that order and wish to do so now.

The Corporation's insistence that Ms. Strong is merely a "non-party respondent" notwithstanding, we determined she is a necessary party due in principal part to the fact the Corporation sought to obtain judicial relief against her in its complaint. The Corporation's expressed intent to obtain judicial relief against Ms. Strong cannot be disputed and is evident from reading pertinent parts of the complaint:

8. ***DECLARE*** *that, as a matter of law, all respondents are constructive trustees with a fiduciary duty to Plaintiff in the use of Res*, as trust corpus, for the sole benefit of Plaintiff;

9. ***DECLARE*** *that all respondents are obligated*, forthwith and without further delay, to *turn over Res to Plaintiff*;

10. ***MANDATING*** *that any and all respondents* who ever received any part or portion of Res *are enjoined*, henceforth and forevermore, *from disbursing*, destroying or otherwise mitigating the possession or relinquishing control over said portion or *part of Res*, except by delivery of the part or portion of Res received by the respondent, plus interest specified in the Assignment, from and since respondent's receipt, dominion or control of Res or any portion thereof;

11. ***MANDATING*** *that each respondent* who ever has received any part or portion of Res, forthwith, to *deliver to the Court*, for keeping in the Registry

-12-

of the Court until disbursed by the Court according to law, *that part or portion of Res that respondent now has, plus interest has accrued*, as specified in the Assignment, since said respondent has had possession, dominion and control of Res or a portion of Res and disbursed to another respondent;

12. ***ADJUDGING*** *that Plaintiff be paid by a respondent equal to reasonable costs and attorneys fees incurred because of the prosecution of the instant case*;

(Emphasis added).

The lack of a court's jurisdiction, and thus power, to issue an injunction against a non-party, or to otherwise issue a mandatory order, is evident from this Court's discussion in *Carr v. McMillan*, No. M2007-00859-COA-R3-CV, 2008 WL 2078058, at *8-9 (Tenn. Ct. App. May 14, 2008). In that matter, which involved custody of the parties' children, the father of the children correctly asserted that the trial court "erred by issuing injunctions against persons who are not parties to this action." *Id*. at *9. The challenged order stated: "[a]ll of the parties involved including Grandmother, Father, the two grandfathers, Father's new wife and the extended families of each are to say nothing negative about any of the other parties or the parties' families." *Id*. However, the trial court erroneously identified the extended family as parties, they were not; the only parties in *Carr v. McMillan* were the parents, Mrs. Carr and Mr. McMillan. *Id*. As we explained:

Although it is clearly in the child's best interest for [the grandmother], as well as the extended families of the parties, to comply with the Order, they are not subject to the jurisdiction of the court and thus they, as non-parties, are not subject to the injunction.

*Id.* (citing *Henderson v. Mabry*, 838 S.W.2d 537, 541 (Tenn. Ct. App. 1992)). Accordingly, on remand, we instructed the trial court in *Carr* "to modify the judgment to delete that portion of the Order that seeks to enjoin persons other than the parties to this action." *Id.*

There are numerous cases in which this court and others have held that a trial court has no jurisdiction and, thus, no authority to issue orders against persons who are not parties to the action. *See Culwell v. Culwell*, 133 S.W.2d 1009 (Tenn. Ct. App. 1939) (holding that a divorce court has no power to impound property in which neither party has an interest, legal or equitable); *see also AmSouth Bank v. Cunningham,* 253 S.W.3d 636, 640 n.6 (Tenn. Ct. App. 2006) (citing Tenn. R. Civ. P. 14) ("When a claim is being asserted against a non-party

over which the court does not yet have personal jurisdiction, it is a third party claim, which carries with it a duty to issue summons and to comply with due process requirements.").[6]

Accordingly, the trial court in this action would have had no power and no jurisdiction to grant the Corporation the relief it sought in paragraphs 8, 9, 10, 11, and 12 of its Complaint unless Ms. Strong was a party to the action. The Corporation, however, failed to prepare a summons for Ms. Strong, thereby thwarting the issuance or service of summons on her. As a consequence, she would not have been subject to personal jurisdiction without such service of process; however, Ms. Strong waived service of process by filing an Answer and Counterclaim. *See Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994) (holding that a court's lack of personal jurisdiction may be waived and "one method of waiver is by making a voluntary 'general appearance' before the court in order to defend the suit on the merits, . . ."); *see also Dixie Savings Stores, Inc. v. Turner*, 767 S.W.2d 408, 410 (Tenn. Ct. App. 1988). Accordingly, Ms. Strong acquiesced to the jurisdiction of the court.

For the above reasons, we find the Corporation's assertion that Ms. Strong is not a party to this action without merit, and as a party, Ms. Strong has standing to pursue this appeal.

II.
THE CORPORATION'S MOTION FOR SUMMARY JUDGMENT

The Corporation filed a motion for summary judgment contending it was entitled to judgment as a matter of law because there were no genuine issues of material fact and under the document entitled "Assignment of the Chose-in-Action," it was entitled to recover the res. As the moving party, the Corporation is entitled to summary judgment "only if the pleadings, depositions, interrogatories, admissions and affidavits show there is no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008) (quoting Tenn. R. Civ. P. 56.04; *accord Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000)). "The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Id*. (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

---

[6]Two of the most fundamental requirements of due process are notice and an opportunity to be heard. *Phillips v. State Bd. of Regents of State Univ. & Cmty. Coll. Sys. of State of Tenn.*, 863 S.W.2d 45, 50 (Tenn.1993). The purpose of these requirements is to assure that persons to be affected by a court's ruling are "'informed that the matter is pending and can choose for [themselves] whether to appear or default, acquiesce or contest.'" *Greene v. Lindsey*, 456 U.S. 444, 449 (1982) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The Corporation moved for summary judgment on its claim for entitlement to the res based upon the document entitled "Assignment of Chose-In-Action." In response, Ms. Strong responded creating a dispute regarding several of the statements of undisputed material fact that the Corporation filed in support of its motion. We find these facts to be material to the ultimate issue in dispute and, therefore, hold the trial court erred in granting summary judgment to the Corporation.

A.

"The assignment of a chose in action is considered to be a contract, and, as with any contractual agreement, it must meet requisites such as mutual assent and consideration." *Denley Rentals, LLC v. Etheridge*, No. W2000-00189-COA-R3CV, 2001 WL792646, at *3 (Tenn. Ct. App. July 11, 2001) (citing *Hutsell v. Citizens Nat'l Bank,* 64 S.W.2d 188, 190 (Tenn. 1933)). The determination of whether an assignment is valid is a question of law. *Id*. (citing *Ford v. Robertson,* 739 S.W.2d 3, 5 (Tenn. Ct. App. 1987)).

The trial court narrowed the issues to whether the assignment was unconscionable and, if so, unenforceable either in whole or in part. "Unconscionability may arise from a lack of a meaningful choice on the part of one party (procedural unconscionability) or from contract terms that are unreasonably harsh (substantive unconscionability)." *Trinity Indus., Inc. v. McKinnon Bridge Co., Inc.*, 77 S.W.3d 159, 170-71 (Tenn. Ct. App. 2001) (citing *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445 (D.C. Cir. 1965)). As we noted in *Trinity*:

> In Tennessee we have tended to lump the two together and speak of unconscionability resulting
>
>> when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other.
>
> *Haun v. King*, 690 S.W.2d 869 at 872 (Tenn. Ct. App. 1984). Where the parties possess equal bargaining power the courts are unlikely to find that their negotiations resulted in an unconscionable bargain, *Royal Indemnity Co. v. Westinghouse Electric Corp.*, 385 F.Supp. 520 (S.D.N.Y.1974), and terms that are common in the industry are generally not unconscionable. *Posttape Associates v. Eastman Kodak Co.*, 450 F.Supp. 407 (E.D.Pa.1978); *D.O.V.*

-15-

*Graphics, Inc. v. Eastman Kodak Co.,* 46 Ohio Misc. 37, 347 N.E.2d 561 (Common Pleas 1976).

*Id*. at 171.

The trial court determined that portions of the assignment were unconscionable on its face because it restricted the right of Ms. Strong to contest the appropriateness of the fee and left open-ended the fee the Corporation could recover. The trial court also found that the Corporation "enjoyed uneven bargaining power which was exacerbated by the circumstances of the loss of the underlying [legal malpractice] action . . . [against Baker]."

B.

Ms. Strong contends that the assignment was unconscionable both procedurally and substantively because of the circumstances leading up to the signing of the assignment including the conduct of attorney Parrish in representing her in the legal malpractice action and the terms of the assignment itself.

Based upon the record, specifically, the respective statements of "undisputed facts" and "disputed facts," we find there are material facts in dispute pertaining to the circumstances of the signing of the assignment and the dismissal of the underlying legal malpractice claim against John Baker. As the record reflects, the Corporation contends that Mr. Parrish informed Ms. Strong that an expert affidavit on the issue of the professional practice standard was necessary for the hearing and that Ms. Strong stated that she did not want to pay for such an expense, as she was already concerned about the costs. Ms. Strong vigorously disputes these alleged facts. Ms. Strong states that she was never informed of being in a precarious position going into the hearing on the summary judgment motion; to the contrary, she believed Mr. Parrish had obtained the requisite expert witnesses to prevail on the motion.

The Corporation also contends that Ms. Strong was advised of the option of taking a voluntary nonsuit. In her affidavit, Ms. Strong, however, claims that Mr. Parrish never informed her of a nonsuit option. It is also disputed as to what occurred in the meeting between Mr. Parrish and Ms. Strong following the summary dismissal of her suit against John Baker. The Corporation contends that Mr. Parrish explained the ruling to Ms. Strong and answered all of her questions for two and a half hours following the end of the hearing. Ms. Strong contends that Mr. Parrish told her the decision by the trial judge was incorrect, that a motion to alter or amend would be filed, and that they would win such a motion as the law was on their side. Ms. Strong then states that Mr. Parrish told her that the assignment needed to be signed very soon for him to continue to represent her.

Based upon the foregoing and other disputed facts that are material to the issue, we have concluded that facts material to issues raised by the Corporation's motion for summary judgment and Ms. Strong's opposition thereto are in dispute, including the issues of whether the assignment was unconscionable, whether the parties had equal bargaining power, and whether Mr. Parrish recommended that Ms. Strong seek independent advice concerning the assignment he proposed. Accordingly, summary judgment was not appropriate. Tenn. R. Civ. P. 56.04; *see also Stovall v. Clark*, 113 S.W.3d 715, 721 (Tenn. 2003). We, therefore, reverse the grant of summary judgment in favor of the Corporation.

III.
<u>MS. STRONG'S MOTION FOR SUMMARY JUDGMENT</u>

As for Ms. Strong's cross-motion for summary judgment on her claims for breach of contract and breach of fiduciary duty, the trial court ruled that Ms. Strong's "Motion for Summary Judgment is hereby sustained and the Court's Memorandum Opinion is incorporated herein by reference as if specifically set out verbatim and is a final order per Rule 54 T.R.C.P."[7] The trial court further ruled "that upon application, the Respondent, [Ms. Strong] will be awarded attorney's fees." Although the trial court "sustained" Ms. Strong's claims, it did not award Ms. Strong "damages" on her claims. However, upon the filing of her application for attorney's fees as "the prevailing party," Ms. Strong was awarded $10,000 of the attorney's fees she incurred in defense of the Corporation's claims.

The Corporation contends any grant of attorney's fees was in error as Ms. Strong was not the "prevailing party." This is because, the Corporation insists, the trial court held the provision of the assignment awarding attorney's fees was not unconscionable, and the corporation was awarded $50,000 plus interest.

Ms. Strong claims Mr. Parrish breached his fiduciary duty to her when he insisted that their contractual relationship be modified immediately after "losing" the malpractice case. Ms. Strong further asserts that the assignment and Mr. Parrish's conduct must be evaluated under the "close scrutiny" standard as described in *Waller, Landsden, Dortch, & Davis v. Haney*:

> Owing to the confidential and fiduciary relation between an attorney and his client, and to the influence of the attorney over his client, growing out of that relation, courts of law, and especially of equity, scrutinize most closely all transactions between an attorney and his client. To sustain a transaction of advantage to himself with his client, the attorney has the burden of showing,

---

[7]Pertinent parts of that ruling are set forth earlier in this opinion.

not only that he used no undue influence, but that he gave his client all the information and advice which is (sic) would have been his duty to give if he himself had not been interested and that the transaction was as beneficial to the client as it would have been had the client dealt with a stranger.

*Waller, Lansden, Dortch & Davis v. Haney*, 851 S.W.2d 131-132 (Tenn. 1992) (citing *Hutchinson v. Crowder*, 8 Tenn. Civ. App. 114 (1917)).

We have determined that many of the facts that pertain to the issues raised in the Corporation's motion for summary judgment are also pertinent and material to the issue of whether Mr. Parrish breached his fiduciary duty to Ms. Strong. A party is entitled to summary judgment if there is no genuine issue as to any material fact and the party is entitled to a judgment as a matter of law. *Martin*, 271 S.W.3d at 83; Tenn. R. Civ. P. 56.04. Therefore, having concluded that several facts material to Ms. Strong's claims for breach of contract and breach of fiduciary duty are disputed, Ms. Strong is not entitled to summary judgment. Accordingly, we reverse the grant of summary judgment in favor of Ms. Strong.

## In Conclusion

The trial court's decisions to grant partial summary judgment in favor of the Corporation and partial summary judgment in favor of Ms. Strong are both reversed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against both parties equally.

_____
FRANK G. CLEMENT, JR., JUDGE